SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

2626 BWAY LLC,

                        Plaintiff,                              Index No.:
                                                                105635/10
        -against-
                                                          **NOTICE OF APPEAL**
BROADWAY METRO ASSOCIATES, L.P.,

                        Defendant.

**PLEASE TAKE NOTICE** that Plaintiff, 2626 BWAY LLC ("Plaintiff"),

hereby appeals to the Appellate Division, First Department from the Order of the

Supreme Court, New York County (Bransten, J.S.C.), entered in the office of the

Clerk of the within named Court on June 23, 2010 ("Order"), and this appeal is

taken from each and every part of said Order, as well as from the whole thereof.

Dated:  New York, New York
        July 21, 2010

                                    CORNICELLO, TENDLER &
                                    BAUMEL-CORNICELLO, LLP
                                    Attorneys for Plaintiff
                                    Two Wall Street, 20th Floor
                                    New York, New York 10005-2072
                                    (212) 994-0260

                              By: _____
                                    Kristine L. Grinberg, Esq.

TO:    M. TERESA DALEY LAW OFFICES, P.C.
       Attorneys for Defendant
       520 Eighth Avenue, 24th Floor
       New York, New York 10018
       Attn: M. Teresa Daley, Esq.
       (212) 560-3941

kg@Y:\KG\191521-42 - 2626 BWAY LLC\Notice of appeal.07.21.10.doc

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT

2626 BWAY LLC,

                              Plaintiff-Appellant,

                 -against-

BROADWAY METRO ASSOCIATES, L.P.,

                              Defendant-Respondent.

Index No.:
105635/10

**PRE-ARGUMENT STATEMENT**

    1.    The title of the action is as set forth above.  The full names of the original parties to this action are as captioned.

    2.    Counsel for Plaintiff-Appellant, 2626 BWAY LLC ("Appellant"), is Cornicello, Tendler & Baumel-Cornicello, LLP, Two Wall Street, 20th Floor, New York, New York 10005-2072, tel. (212) 994-0260.

    3.    Counsel for Defendant-Respondent, Broadway Metro Associates, L.P. ("Respondent"), is M. Teresa Daley Law Offices, P.C., 520 Eighth Avenue, 24th Floor, New York, New York, tel. (212) 560-3941.

    4.    This appeal is taken from an Order of the Supreme Court of the State of New York, County of New York (Bransten, J.S.C.), entered in the Office of the Clerk of the County of New York on June 23, 2010 ("Order").  (A copy of the Order is annexed hereto as Exhibit "A").

    5.    On or about April 29, 2010, Appellant commenced this action for, *inter alia*, a *Yellowstone* Injunction and various declaratory relief concerning

three (3) Notices of Default that Respondent sent to Appellant's counsel on or about March 18, 2010 (the "Notices of Default") regarding the subject commercial lease ("Lease") entered into by the parties for the commercial premises located at 2624-2626 Broadway, New York, New York (the "Premises").

6.     On April 29, 2010, Appellant moved by Order to Show Cause for a *Yellowstone* Injunction: (a) enjoining and restraining Respondent from terminating the Lease for the Premises; (b) enjoining and restraining Respondent from ejecting and/or ousting Appellant from the Premises; (c) enjoining and restraining Respondent from disturbing in any manner the possession and rights of Appellant in the Premises; (d) extending the time for Appellant to cure any alleged default under the Lease as alleged in the Notices of Default until such time as the Court determines that such a default had occurred; and (e) granting Appellant sufficient opportunity to cure the alleged default by tolling the May 3, 2010 expiration date of the Notices of Default.

7.     On that date, the Supreme Court (Bransten, J.S.C.) granted Appellant's request for a temporary restraining order against Respondent pending the hearing of the motion and directed that a formal hearing be held on such motion.

8.     Respondent then cross-moved for an order directing Appellant to pay use and occupancy, deposit all rent that had accrued to date into an escrow account and to post a bond or an undertaking in the amount of at least $1,000,000.00.

9.     The hearing on the motion and cross-motion was held over

four (4) days in June 2010.

     10.  By Order, entered on June 23, 2010, the Supreme Court, New York County (Gische, J.S.C.) denied Appellant's motion for a *Yellowstone* Injuction; and granted Respondent's cross-motion to the extent of ordering Appellant to pay use and occupancy to Respondent at the monthly rate of $48,250.00 for the period beginning in June 2010 and lasting throughout the pendency of this action, and ordering Appellant to pay Respondent June 2010 use and occupancy by June 25, 2010.

     11.  On appeal, Appellant will demonstrate that the Supreme Court Order is contrary to law and appellate precedent.

Yours, etc.

Dated: New York, New York
        July 21, 2010

CORNICELLO, TENDLER &
BAUMEL-CORNICELLO, LLP
Attorneys for Plaintiff-Appellant
Two Wall Street, 20th Floor
New York, New York 10005-2072
(212) 994-0260

By: _____
    Kristine L. Grinberg, Esq.

TO:   M. TERESA DALEY LAW OFFICES, P.C.
      Attorneys for Defendant
      520 Eighth Avenue, 24th Floor
      New York, New York 10018
      Attn: M. Teresa Daley, Esq.
      (212) 560-3941

kg@Y:\KG\191521-42 - 2626 BWAY LLC\Pre-argument statement.07.21.10.doc

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:
-----------------------------------------------------------------------X

2626 BWAY, LLC                                          Index No. 105635/10

                         Plaintiff,                    ORDER WITH
          -against-                                    NOTICE OF ENTRY


BROADWAY METRO ASSOCIATES, L.P.

                         Defendant.

-----------------------------------------------------------------------X

        PLEASE TAKE NOTICE, that the within is a true copy of the Decision/Order dated June 21,

2010 and entered in the office of the Clerk of the above-named Court on June 23, 2010.

Dated:  New York, New York
        June 28, 2010

                                        Yours, etc.


                                        M. TERESA DALEY LAW OFFICES, P.C.



                                        By: _____
                                            M. TERSA DALEY, ESQ.
                                            Attorney for Defendant
                                            520 Eighth Avenue, 24TH FL.
                                            New York, New York 10018
                                            (212) 560-3941


TO:  Cornicello, Tendler & Baumel-Cornicello, LLP
     Attention: David Tendler
     Two Wall Street, 20th Floor
     New York, NY 10005

1D-14791    Doc 15    Filed 09/29/10    Entered 09/29/10 16:40:16    Main Document
Pg 8 of 24

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____                    PART 63

_____Justice_____

2626 Bway LLC                          INDEX NO.        105633/10

                                       MOTION DATE       6/15/10

                                       MOTION SEQ. NO.        1

Broadway Metro Associates              MOTION CAL. NO. _____

The following papers, numbered 1 to ____ were read on this motion to/for _____

|                                                                | PAPERS NUMBERED |
|----------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...|                 |
| Answering Affidavits — Exhibits                                 |                 |
| Replying Affidavits                                            |                 |

Cross-Motion:  ☐ Yes  ☒ No

Upon the foregoing papers, it is ordered that this motion

RECEIVED

JUN 23 2010

MOTION SUPPORT OFFICE
NYS SUPREME COURT - CIVIL

IS DECIDED

IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated:  6-21-10                          _____
                                         HON. EILEEN BRANSTEN, J.S.C.

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST      ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 3
-----------------------------------------------------------------------X
2626 BWAY, LLC,

                         Plaintiff,                Index. No.: 105635/10

        -against-                            Decision After Hearing

BROADWAY METRO ASSOCIATES, L.P.,

                         Defendant.

-----------------------------------------------------------------------X

PRESENT:    EILEEN BRANSTEN, J.

      The parties, 2626 BWAY LLC ("Tenant" and/or "2626") and BROADWAY METRO

ASSOCIATES, L.P. ("Landlord" and/or "BROADWAY") appeared for a hearing on a

*Yellowstone* Injunction on June 10, 11, 14 and 15, 2010.    At the conclusion of plaintiff's

case, and after hearing argument from both sides, the Court denied plaintiff's motion for a

*Yellowstone* Injunction.

      Plaintiff's motion for a *Yellowstone* Injunction was brought before this Court, and the

Order to Show Cause signed, on April 29, 2010. Plaintiff asked the Court to: (1) enjoin and

restrain the defendant BROADWAY from terminating the commercial lease (the "Lease")

entered into by the parties for the premises located at 2624-2626 Broadway (the "Premises");

(2) enjoin and restrain the defendant, BROADWAY, from ejecting and/or ousting 2626 from

the Premises; and (3) extending the time for 2626 to cure any default under the Lease as

*001*

2626 BWAY LLC
   v. BROADWAY METRO ASSOCIATES, L.P.

Index No.: 105635/10
page 2

alleged in the Notices of Default until such time as this Court determined that such a default
had occurred and granting 2626 sufficient opportunity to cure the default by tolling the May
3, 2010 expiration date of the three (3) notices of default sent to the 2626's counsel on or
about March 18, 2010.

On April 29, 2010, the Court granted plaintiff's request for Temporary Restraining
Order until BROADWAY had an opportunity to oppose 2626's request for a *Yellowstone*
Injunction and the plaintiff could reply to defendant's opposing papers. The parties were
ordered to appear on June 10, 2010, for a hearing on 2626's request for a *Yellowstone*
Injunction.

Pursuant to the Court's direction, BROADWAY submitted its opposition on May 27,
2010. Broadway also cross-moved for an order directing 2626 to pay use and occupancy,
deposit all rent that had accrued to date into an escrow account and to post a bond/or an
undertaking in the amount of a minimum of $1 million. 2626 opposed BROADWAY's
cross motion.

**Applicable Standards for a Yellowstone Injunction**

A *Yellowstone* Injunction is different from the usual request for a Temporary
Restraining Order (TRO) or for a Permanent Injunction.

2626 BWAY LLC
   v. BROADWAY METRO ASSOCIATES, L.P.

Index No.: 105635/10
page 3

The New York Court of Appeals, in *First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, (21 NY2d 630 [1968]), reversed the Appellate Division to the extent that the Second Department gave the tenant additional time to cure after the lease had terminated due to the tenant's failure to cure a default caused by citation issued by the New York City Fire Department. The Court of Appeals stated that where a tenant had effectively surrendered its commercial lease prior to seeking redress in the court, the courts were powerless to remedy the situation.

As a result of the Court of Appeals' decision and subsequent case law, it is now black letter law that the Court will grant a tenant a *Yellowstone* injunction if the tenant can establish by the preponderance of the credible evidence that the tenant:

1.    Holds a valid commercial lease;

2.    Received notice of default, notice to cure or a concrete threat of the termination of the lease from the landlord;

3.    Sought injunctive relief from the New York State Supreme Court before the termination of the lease; and

4.    Has the desire and ability to cure the alleged default in any manner short of vacating the premises

(*225 East 36th Street Garage Corp. v. 221 East 36th Street Owners Corp.* 211 A.D.2d 420, 421 [1st Dept. 1995] [internal citations omitted]). The First Department also stated that the standard that courts should apply in determining a *Yellowstone* injunction is "far less than the

2626 BWAY LLC                                             Index No.: 105635/10
    v. BROADWAY METRO ASSOCIATES, L.P.                   page 4

showing normally required for obtaining preliminary injunctive relief *(id.* [internal citations

omitted]). Indeed, in *225 East 36th Street Garage Corp.,* the court determined that when the

tenant "contended" that it had made efforts and cured some of the purported breaches, and

that the tenant was "continuing to take various steps to remedy the alleged defaults," that

these actions "satisfie[d] the requirement that the plaintiffs have the desire and ability to

cure" *(id.* at 422).

  Finally, the *225 East 36th Street Garage Corp.* court concluded that:

> Since a *Yellowstone* injunction's primary purpose is to maintain the
> status quo and as the law does not favor forfeiture of the leasehold
> (internal citations omitted) the relief [the *Yellowstone* injunction]
> should be granted

*(id.).*

### Elements of a *Yellowstone* Injunction in this Case

  The parties agree that 2626 holds a valid commercial lease and that the lease was in

full force and effect at the time the request for a *Yellowstone* injunction was filed. The

parties also agree that 2626 had filed three Notices of Default.

  The first Notice of Default, dated March 18, 2010, claimed that the Tenant was in

violation of Article 13 of the Lease in that:

2626 BWAY LLC
v. BROADWAY METRO ASSOCIATES, L.P.

Index No.: 105635/10
page 5

> Tenant failed for more than thirty (30) days after Tenant
> received Landlord's Notice dated January 7, 2010 . . . to comply
> with and perform its obligations under Article 13 of the Lease.
> . . (namely) in that you must provide and maintain in full force
> and effect insurance, as more specifically required by Article 13
> of the Lease, with insurers approved by the Landlord and
> provide the Landlord with a copy of the original insurance
> policies or other appropriate evidence of the existence of all
> policies or renewal policies bearing notations evidencing the
> payment of premiums . . . .

The Thirty Day Notice of Default was to end on May 3, 2010. (Plaintiff's Order to Show
Cause ["OSC"] of April 29, 2010, Souto Aff., Ex. A).

The second Notice of Default, also dated March 18, 2010, claimed the Tenant was

in default of Article 9 of the Lease in that:

> [the tenant failed] to comply with and perform Tenant's
> obligations as set forth in Article 9 of the Lease and as directed
> to do so in the attached January 7, 2010 Notice by promptly and
> diligently curing and removing ECB Violation Number:
> 34784275Z issue date - 7/14/2009, and ECB Violation Number
> 34741559K issue date - 9/1/2009 from the Building's record,
> and/or pay the fines or fees imposed thereby, and provide and
> file a certificate of correction as required by the governmental
> authority having jurisdiction over said violations and their cure
> and to provide Landlord with written proof that Tenant has done
> so . . .

The Thirty Day Notice of Default was to end on May 3, 2010. (Plaintiff's OSC of April

29, 2010, Souto Aff., Ex. B).

2626 BWAY LLC                                          Index No.: 105635/10
    v. BROADWAY METRO ASSOCIATES, L.P.                      page 6

The parties conceded that the third Notice of Default sent by Landlord for 2626's

failure to provide Landlord access to the premises was cured when the Tenant provided

access to the Landlord and his representatives.

### The Evidence

The Court heard from four witnesses: three for the plaintiff and one for the defendant.

The main witness for the plaintiff was the JOHN SOUTO who testified that he was 2626's

"managing partner . . . the manager member" of 2626 (Tr. 16:10-11).

The other witnesses for the plaintiff were HASHEM KHASAWNEH, a structural

engineer called as an expert on behalf of 2626, and JAMES J. TOOMEY, JR., a managing

counsel for the Travelers Insurance Company. BROADWAY called one witness, out of turn,

STEVEN LOWMAN, a building inspector for Department of Buildings.

The parties presented the evidence as follows:

On September 1, 2006, 2626 and BROADWAY entered into a commercial lease for

a period of 48 years, from September 1, 2006 to August 31, 2054, for a two story building

that had previously been used as a movie theater (the "Premises"). The Premises consisted

of a basement, an orchestra floor and a mezzanine. Outside of the Premises was a marquee

or, as it was sometimes described, a canopy, which stretched the width of the sidewalk and

2626 BWAY LLC
v. BROADWAY METRO ASSOCIATES, L.P.

Index No.: 105635/10
page 7

around 40 feet in length parallel to the outside wall of the building. It was the condition of this marquee which was the subject matter of the two ECB violations which the Landlord notified to the tenant as his Second Notice of Default and later, after the *Yellowstone* motion was made, a third ECB violation, dated May 4, 2010, calling for a structural engineer to report on the integrity of the marquee.

The Court heard extensive testimony and had the opportunity of considering the numerous pieces of evidence submitted by both the Tenant and the Landlord concerning the ECB violations placed upon the marquee, including the testimony of a structural engineer. The totality of the testimony and the evidence submitted by the Plaintiff would certainly have caused the court, on a motion for a directed verdict at the end of the Plaintiff's case, to reserve its decision on a *Yellowstone* injunction until after hearing the Landlord's witnesses and seeing the evidence to be submitted on behalf of the defendant. However, other issues presented obviated the need for the Court to do so.

### *The Insurance Issue*

The Landlord moved for a 30 day Notice of Default on the Tenant's failure to abide by the requirements of Article 13 of the Lease, specifically the Tenant's failure to obtain an insurance policy for the Premises acceptable to the Landlord. The issue of insurance is a matter of contention in this and related cases.

2626 BWAY LLC                                      Index No.: 105635/10
v. BROADWAY METRO ASSOCIATES, L.P.                          page 8

In a prior case brought by the same parties before this Court under Index No.
600035/09, 2626 moved for a *Yellowstone* Injunction. In that case, there was testimony that
in September, 2009, the Tenant notified Landlord that it intended to purchase an insurance
policy from the Lloyd's of London. The Landlord refused to accept the draft form of the
policy because Lloyd's of London stated in the draft language of the policy that Lloyd's of
London was not licensed by the State of New York, that it would not be subject to the rules
and regulations of the New York State Department of Insurance and that it would not
participate in the New York State Department of Insurance Insolvency Fund (Hearing
Transcript of Jan. 12, 2009, at 9:11-17).

As a result of the Landlord's objections to the Lloyd's of London proposed policy, the
Tenant brought a motion to obtain a *Yellowstone* Injunction. The Court refused to grant the
injunction because:

> it is ordered that this OSC for a *Yellowstone* injunction is denied
> for the reasons stated at a hearing on the record on this date
> (David Teich SCR) namely that plaintiff has not procured
> insurance which is satisfactory to the Landlord. While the name
> "Lloyd's of London" is venerable, it is not in conformity with
> the Insurance Laws of the State of New York, namely it is not
> a member of the NYS Insurance Insolvency Fund. This is the
> 2nd attempt by the Plaintiff for a Yellowstone Injunction. The
> first was withdrawn w/o prejudice. This constitutes the decision
> and order of the court.

The Court signed the order on January 12, 2009. The Court's decision was not appealed.

2626 BWAY LLC                                    Index No.: 105635/10
    v. BROADWAY METRO ASSOCIATES, L.P.                      page 9

Throughout this hearing, there were again questions concerning the Tenant's

insurance coverage of the Premises. Mr. Souto stated, in response to the Court's question,

that he had insurance on the premises (Hearing Transcript of June 10, 2010 ["June 10, 2010

Tr."], at 50:12). A few lines later, the following testimony was adduced:

The Court:          When did you procure the policy?

Mr. Tendler (Mr. Souto's attorney)

                    Do you understand the question?

The Court:          You asked him the question, 'Did you procure a policy?' and he

                    answered . . 'Yes, I did.' And I asked, 'when did you procure

                    such a policy?'

The Witness (Mr. Souto):

                    The actual policy? I don't understand the question?

The Court:          You are the one that answered, 'I procured a policy.'

The Witness:        Several months ago, about two months ago. And I believe I just

                    got a copy of the policy a couple of – about a day ago or a

                    couple of minutes ago

(June 10, 2010 Tr. at 50:21-51:10).

During the course of the testimony by JAMES J. TOOMEY, JR., managing counsel

for the Travelers Insurance Company, the plaintiff introduced into evidence certified copies

2626 BWAY LLC                                              Index No.: 105635/10
        v. BROADWAY METRO ASSOCIATES, L.P.                        page 10

of the insurance policies covering the Premises. The policies ran from April 1, 2010, to April

1, 2011. Even providing 2626 the benefit of the Travelers' policies, the Tenant never

submitted these policies to the Landlord prior to the Tenant's reception of the policy

documents on or around June 10, 2010.

On his redirect, Mr. Souto established that during the early years of his tenancy he had

numerous insurance policies to which the Landlord did not object. It was only after 2626's

Senaca Insurance policy expired in or about September 2009, that the Landlord, upon being

informed of the draft policy from Lloyd's of London, objected to the Tenant's policy.

After the Court denied the Tenant's *Yellowstone* injunction application on January 12,

2009, and found that the Lloyd's of London policy did not satisfy the insurance requirements,

Mr. Souto testified that he had not sought to purchase any further insurance because, Mr.

Souto claimed, the Landlord had told him that the Landlord had purchased insurance on

2626's behalf:

(By Mr Tendler, Mr. Souto's attorney on redirect)

Q.          Mr. Souto, did you ever have a conversation with Mr. Bialek (the

            Landlord's representative) regarding the insurance for the building?

A.          Yes.

Q.          When did you have this conversation?

A.          In February or March of 2009.

2626 BWAY LLC                                          Index No.: 105635/10
    v. BROADWAY METRO ASSOCIATES, L.P.                          page 11

Q.          What did he say to you and what did you say to him?

     (Objection overruled)

The Court:  Did he have a conversation?

A.          Yes.

Q.          Where did you have this conversation?

A.          I believe we were having lunch on 55th and Third. I forget the name of

        the place.

Q.          Who was present?

A.          Just him and I.

Q.          What did he say to you, what did you say to him, regarding the

        insurance?

A.          I said that my insurance with Lloyd's of London was still in effect and

        he said that he sent me a notice of termination on the lease and that he

        had gotten insurance and why was I paying for insurance if he had

        already got it with the money from the security account?

        (Objection)

The Court   He said that he got insurance?

A.          He said that he had already gotten insurance and I told him that I had

        a Lloyd's of London policy still in effect. He said he sent me a notice

2626 BWAY LLC                                           Index No.: 105635/10
   v. BROADWAY METRO ASSOCIATES, L.P.                              page 12

        of termination and he had gotten insurance with money from the

        security account.

Q. (By Mr. Tendler)

        You said he had gotten insurance.

A.        Yes.

Q.        What type of insurance? Did he state for whom the insurance was for?

A.        He said it was for the building at 2626 Broadway.

Q.        Not for what, but for whom?

A.        No. I don't believe he said from whom.

Q.        ... What did he state specifically with regard to the security account?

A.        He said he took the money out of the security account to pay for the

        insurance.

Q..       What did you do as a result of this conversation regarding your

        insurance?

        (Objection withdrawn)

A.        I left the Lloyd's of London in effect. I had already paid for it and I

        asked Mr. Bialek to send a copy of the insurance policy over which he

        never sent me.

2626 BWAY LLC                                          Index No.: 105635/10
   v. BROADWAY METRO ASSOCIATES, L.P.                    page 13

Q.            Did the Lloyd's of London policy expire?

A.            I think in June or July of 2009.

(June 14, 2010 Tr. 541:16 - 543:25)

2626 introduced no documentary proof as to the validity or existence of this
conversation. The Tenant never followed up this conversation with an e-mail, a letter or a
fax. Apart from Mr. Souto's totally unsubstantiated statements there is nothing to verify the
allegations made. Further, the Tenant, should the Tenant have desired, could have called Mr.
Bialek, who was present in court during the hearing, to the witness stand for the purpose of
corroborating his statements concerning insurance. The Court must therefore discount Mr.
Souto's statements.


***Yellowstone* Injunctions and the Failure to Procure Insurance**

At the end of the Tenant's case, the Landlord made a motion for a directed verdict
based on the issue of the Tenant's failure to maintain insurance pursuant to Article 13 of the
Lease.

Article 13 of the Lease reads, in pertinent part:

> 13.1: Tenant, at all times during the Lease Term and at Tenant's
> expense, shall provide and maintain in full force and effect with
> insurers approved by the Landlord: (a) insurance with respect to
> the Improvements against loss or damage by fire, lightning etc.

2626 BWAY LLC                                           Index No.: 105635/10
   v. BROADWAY METRO ASSOCIATES, L.P.                          page 14

> . . included under "all risk" policies, in an amount equal to at
> least 100% of the full replacement value of the improvements.
> . . (b) public liability and property damage insurance protecting
> the Landlord against any and all liability occasioned by
> negligence, occurrence, accident or disaster in or about the
> Demised Premises or any part thereof . . . or adjoining
> sidewalks, curbs. . . Or any appurtenances thereto . . . in the
> amounts in the case of public liability $1,000,000 per person and
> $2,000,000 per occurrence, and in addition an umbrella liability
> policy in an amount of no less than $5,000,000 and in the case
> of property damage, $1,000,000 . . .

The Tenant's failure to procure and maintain insurance in conformity with Article 13

of the Lease is fatal in an application for a *Yellowstone* injunction where the Landlord has

notice the default for the Tenant's failure to secure insurance pursuant to the Commercial

Lease provision.  The First Department, in affirming the trial court's (Justice Michael

Stallman's) decision to deny a tenant a *Yellowstone* injunction, stated:

> The motion court found, after a hearing, that plaintiffs had not
> previously and continuously maintained insurance coverage as
> required by their commercial lease.  This violation was a
> material breach of the lease (internal citations omitted) and, in
> these circumstances, an incurable violation that is an
> independent basis for the denial of *Yellowstone* relief. (internal
> citations omitted).  Plaintiffs' attempt to demonstrate their
> ability and readiness to cure the alleged violation by procuring,
> during the cure period, insurance coverage prospectively for the
> remaining 10 months of their lease term is unavailing, *as such*
> *policy does not protect defendant against the unknown*
> *universe of any claims arising during the period of no*
> *insurance coverage.*

(*Kyung Sik Kim v Idylwood, N.Y., LLC*, 66 AD3d 528, 529 [1st Dept 2009] [emphasis
added]).

2626 BWAY LLC                                          Index No.: 105635/10
    v. BROADWAY METRO ASSOCIATES, L.P.                    page 15

In this case, Mr. Souto himself testified that he was without insurance for a substantial

periods of time. The Court finds that Mr. Souto admitted that he had no insurance prior to

April 10, 2010 (*see* Transcript of June 15, 2010 at 602:14-19). The Court must therefore find

that the Tenant's failure to insure the Premises as required by the Lease is a material violation

thereof (*Kyung Sik Kim*, 66 AD3d at 529). The Court thus denies the Tenant's motion for

a *Yellowstone* injunction.

### *Use and Occupancy*

Upon good cause shown, the Court grants the Plaintiff remuneration of $48,250 per

month for the Tenant's use and occupancy of the Premises. This sum is equal to the rent that

would be paid by the Tenant as per the terms of the Lease, and, but for the payment due for

June 2010, is to be paid as per the terms of the Lease, for the time period beginning in June

2010 and throughout the pendency of this action, including any time accruing during any

appeal of any Order of this Court.

### Conclusion

Accordingly, it is

ORDERED that Defendant Broadway Metro Associates, L.P.'s motion for a

*Yellowstone* injunction is denied; and it is further

2626 BWAY LLC
    v. BROADWAY METRO ASSOCIATES, L.P.

Index No.: 105635/10
page 16

ORDERED that Defendant is required to pay for use and occupancy of 2626

Broadway, at a rate of $48,250 per month (the "Rent"), for the time period beginning in

June 2010 and lasting throughout the pendency of this action, payable as per the terms of

the Lease between Plaintiff and Defendant; and it is further

ORDERED that Defendant is required to pay to Plaintiff June's Rent by June 25,

2010.

This constitutes the decision and order of the court.

Dated:  New York, New York
     June 21, 2010

ENTER:

Hon. Eileen Bransten, J.S.C.