# M. TERESA DALEY LAW OFFICES, P.C.

520 Eighth Avenue, 24th Floor
New York, New York 10018
Phone: 212-560-3943    Fax: 917-351-0983
e-mail address: alawrence@newmarkkf.com

M. Teresa Daley

---------

Andrea J. Lawrence
   Of Counsel

November 12, 2010

Via e-mail at
scc.chambers@nysb.uscourts.gov

Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green – Courtroom 610
New York, New York 10004

    Re:    In re 2626 BWAY LLC
           Docket No.: 10-14731 (SCC)

Dear Judge Chapman:

    We represent Broadway Metro Associates, L.P. ("Broadway Metro"), a creditor of Debtor as well as its landlord at the building located at 2626 Broadway, New York, New York (the "Premises"). At the evidentiary hearing held on November 9, 2010 arising from Broadway Metro's motion to vacate the automatic stay and/or dismiss this proceeding on the basis it was filed in bad faith, the Court requested that the parties provide it with case law as to whether or not this Court has the power or authority to order Debtor to immediately surrender possession of the Premises to Broadway Metro as a result of Debtor's failure to pay post-petition use and occupancy to Broadway Metro. Based upon our review of the facts herein, as well as the relevant statutory and case law, it is our conclusion that this Court can, in fact, order Debtor to immediately surrender possession of the Premises to Broadway Metro.

    It cannot be disputed that this Court has wide discretional latitude to vacate the automatic stay and to take any other actions in connection therewith, including immediately directing Debtor to surrender the Premises to Broadway Metro. *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). Indeed, 11 U.S.C.S. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary
> or appropriate to carry out the provisions of this title. No provision of
> this title providing for the raising of an issue by a party in interest shall
> be construed to preclude the court from, sua sponte, taking any action

Page 2
Judge Chapman

> or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Thus, we believe that this Court's discretion to vacate the automatic stay further extends to its ability to direct Debtor to immediately surrender possession of the Premises to Broadway Metro.

Moreover, as pertinent case law in this jurisdiction shows, this Court has the authority to direct Debtor to return possession of the Premises to Broadway Metro immediately. *Dennis Griggs v. 25 Realty Associates, LLC,* 2002 U.S. Dist. LEXIS 5977 (S.D.N.Y. 2002), is particularly instructive on the issue as to whether this Court can immediately order Debtor to surrender possession of the Premises to Broadway Metro. In *Griggs*, the debtor, a licensee of the tenant, filed a voluntary bankruptcy petition for Chapter 13 relief. The debtor failed to pay post-petition rent to the landlord, and the landlord moved to vacate the automatic stay pursuant to 11 U.S.C.S. § 362(a). In addition to permitting the landlord to "pursue all of its rights and remedies against the debtor," the bankruptcy court also ordered the debtor to "quit, vacate and surrender possession" of his apartment and return all keys to the landlord. *Griggs* at *3. The appellate court affirmed this decision in all respects. *See also In re Cobham Enterprises, Inc.,* 72 B.R. 779 (Bankr. S.D.N.Y. 1987) (directing debtor to surrender possession of premises); *In re Flexipak, Inc.,* 49 B.R. 641 (Bankr. S.D.N.Y. 1985) (directing debtor to immediately surrender possession of premises to landlord in the event it did not assume lease).

Here, an application of the aforesaid statutory and case law to the facts mandate that the Premises immediately be surrendered to Broadway Metro. First, Debtor no longer has any property interest in the Premises. Specifically, Broadway Metro terminated the Lease pursuant to a Notice of Termination dated June 22, 2010, which terminated the Lease effective as of June 28, 2010. A copy of the Notice of Termination is annexed as **Exhibit 1**. The date of termination was prior to the filing of this bankruptcy proceeding on September 3, 2010. The Notice of Termination, which was prepared and served in accordance with the Lease, terminated Debtor's right and interest in the Premises. Thus, for this reason alone, Debtor has no property interest in the Lease, and this Court should order Debtor to immediately surrender possession of the Premises to Broadway Metro without the need to resort to state court proceedings. *See e.g., In re Seven Stars Restaurant, Inc.* 122 B.R. 213 (Bankr. S.D.N.Y. 1990), *citing to First Nat'l Stores, Inc. v. Yellowstone Shopping Center, Inc.,* 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968); *see also Comp III, Inc. v. Computerland Corp.,* 136 B.R. 636 (Bankr. S.D.N.Y. 1992) ("where an executory contract has been terminated in accordance with its terms prior to bankruptcy, section 365(e)(1) does not authorize the bankruptcy court to reach beyond the veil of the petition to reinstate the contract"); *see also In re Scarsdale Tires Inc.,* 47 B.R. 478 (Bankr. S.D.N.Y. 1985) ("it is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362(a) nor may it be assumed by the debtor under 11 U.S.C. § 365").

Page 3
Judge Chapman

Additionally, Debtor breached this Court's Order dated October 12, 2010 by failing to pay post-petition use and occupancy to Broadway Metro by November 2, 2010. A copy of the relevant transcript from the October 12, 2010 hearing containing this Order is annexed as **Exhibit 2**. In fact, Debtor has not paid any post-petition use and occupancy to Debtor since the commencement of this proceeding on September 3, 2010, and Debtor's actions stand in violation of the Court Order as well as 11 U.S.C.S. § 365(d)(3). This serves as further justification for this Court to immediately order Debtor to surrender possession of the Premises to Broadway Metro. *See, e.g., In re Mad Lolo LLC*, 2009 Bankr. LEXIS 1333 (Bankr. S.D.N.Y. 2009); *Manhattan King David Restaurant, Inc. v. Levine*, 154 B.R. 423, 429 (Bankr. S.D.N.Y. 1993); *see also In re Flexipak, Inc.*, 49 B.R. at 642-643.

Thus, for the reasons set forth herein, Broadway Metro respectfully requests that this Court immediately order Debtor to surrender possession of the Premises to Broadway Metro.

Respectfully submitted,

*[signature]*

Andrea J. Lawrence, Esq.

cc:   Robert Sasloff, Esq. (via email)
      Robert R. Leinwand, Esq. (via email)
      M. Teresa Daley, Esq.

**Exhibit 1**

**BROADWAY METRO ASSOCIATES, L.P.**
C/O Albert Bialek Associates
249 West 34th Street, 2nd Floor
New York, NY 10001
212-751-2408

Dated: June 22, 2010

BY: HAND DELIVERY

2626 BWAY LLC
c/o Seymour I. Hurwitz, Esq.
19 W. 44th Street, Suite 1507
New York, New York 10036

**THREE (3) DAY NOTICE OF TERMINATION OF LEASE**

**PLEASE TAKE NOTICE** that pursuant to Article 19.2 of the Lease dated September 1, 2006 between Broadway Metro Associates, L.P., as Landlord ("Landlord"), and 2626 BWAY LLC, as Tenant, ("Tenant") hereinafter referred to as the "Lease," Landlord has elected to **TERMINATE THE LEASE** as a result of Tenant's failure to have cured Tenant's default as set forth in Landlord's Notice dated March 18, 2010, a copy of which is attached hereto, in that you have failed at all times during the Lease term and at Tenant's expense to provide and maintain in full force and effect with insurers approved by Landlord insurance as more specifically set forth and required pursuant to Article 13 of the Lease, and also based upon the decision of the Supreme Court of the State of New York, County of New York in an action entitled 2626 BWAY LLC v. Broadway Metro Associates, LP, Index Number 105635/2010 on June 15, 2010 wherein the Court found that Tenant failed to have insurance as required by Article 13 of the Lease and that Tenant's failure to do so was an incurable default.

**PLEASE TAKE FURTHER NOTICE** that on **June 28, 2010**, which date is more than three (3) days from the date this Notice is hand delivered to Tenant, the Lease shall terminate and the Lease term shall expire and terminate by limitation, and all rights of Tenant under this Lease shall cease.

**PLEASE TAKE FURTHER NOTICE** that in the event you fail to vacate and deliver possession of the Premises to the Landlord by the end of the day on June 28, 2010, the Landlord shall commence summary holdover proceedings to remove you from possession of the Premises.

Yours etc.,

**BROADWAY METRO ASSOCIATES, L.P.**
By: SEAVEST MANAGEMENT CORP., General Partner

By: _/s/ Albert Bialek_
ALBERT BIALEK, President

1 of 2

BROADWAY METRO ASSOCIATES, L.P.
TO: 2626 BWAY LLC
PAGE TWO
THREE (3) DAY NOTICE OF TERMINATION OF LEASE

cc: Seymour I. Hurwitz, Esq., (by Hand)
    19 W. 44th Street, Suite 1507
    New York, New York 10036

cc: John Souto
    c/o 2626 BWAY LLC (by HAND)
    131 Christopher Street, Second Floor
    New York, New York 10014

cc: 2626 BWAY LLC (by HAND)
    131 Christopher Street, Second Floor
    Ew York, New York 10014

cc: David Tendler, Esq. (by HAND)
    Cornicello, Tendler & Baumel-Cornicello LLP
    Two Wall Street, 20th Floor
    New York, NY 10005-2072

FILE COPY

**BROADWAY METRO ASSOCIATES, L.P.**
C/O Albert Bialek Associates
249 West 34th Street, 2nd Floor
New York, NY 10001
212-751-2408

Dated: March 18, 2010

<u>BY: First Class Mail and Certified Mail Return Receipt Requested</u>
<u>Receipt Number   7009 1410 0001 7871 9162</u>

2626 BWAY LLC
c/o Seymour I. Hurwitz, Esq.
19 W. 44th Street, Suite 1507
New York, New York 10036

### THIRTY (30) DAY NOTICE OF DEFAULT
Regarding Insurance as described herein

**PLEASE TAKE NOTICE** that pursuant to Article 19.2 of the Lease dated September 1, 2006 between Broadway Metro Associates, L.P., as Landlord, and 2626 BWAY LLC, as Tenant, ("Tenant") hereinafter referred to as the "Lease," Landlord has elected to serve this Thirty (30) Day Notice of Default upon Tenant because an Event of Default has occurred as referred to in Article 19.1.3 of the Lease in that Tenant failed for more than thirty (30) days after Tenant received Landlord's Notice dated January 7, 2010, a copy of which is attached hereto and made a part hereof, to comply with and perform its obligations as set forth in Article 13 of the Lease and as directed to do so in the aforesaid Notice.

**PLEASE TAKE FURTHER NOTICE** that you are hereby directed to comply with and perform Tenant's obligations as set forth in Article 13 of the Lease and as directed to do so in the attached January 7, 2010 Notice in that you must provide and maintain in full force and effect insurance, as more specifically set forth in and required by Article 13 of the Lease, with insurers approved by Landlord, and provide the Landlord with a copy of the original insurance policies or other appropriate evidence of the existence of all policies or renewal policies bearing notations evidencing the payment of the premiums therefore as referred to in Article 13 of the lease with insurers approved by Landlord within thirty (30) days from the date that Tenant receives this written Thirty (30) Day Notice of Default, to wit MAY 3, 2010 which date is more than the fifth business day after this Notice has been mailed to Tenant by first class mail and certified mail return receipt requested pursuant to Article 39.1 of the lease.

**PLEASE TAKE FURTHER NOTICE** that in the event you fail to cure this Event of Default by MAY 3 2010 which date is more than thirty (30) days and more than the fifth business day after this Notice has been mailed to Tenant as aforestated, the Landlord shall terminate the term of the lease.

Yours etc.,

BROADWAY METRO ASSOCIATES, L.P.
By: SEAVEST MANAGEMENT CORP., General Partner

By: _____
ALBERT BIALEK, President

BROADWAY METRO ASSOCIATES, L.P.
TO: 2626 BWAY LLC
PAGE TWO

cc: Seymour I. Hurwitz, Esq., (by First Class Mail and Certified Mail
  Return Receipt Requested, Receipt No. 7009 1410 0001 7871 9179
  19 W. 44th Street, Suite 1507
  New York, New York 10036

cc: John Souto
  c/o 2626 BWAY LLC  (by First Class Mail and Certified Mail
  Return Receipt Requested, Receipt No. 7009 1410 0001 7871 9186
  131 Christopher Street, Second Floor
  New York, New York 10014

cc: 2626 BWAY LLC (by First Class Mail and Certified Mail
  Return Receipt Requested, Receipt No. 7009 1410 0001 7871 9193
  131 Christopher Street, Second Floor
  New York, New York 10014

cc: David Tendler, Esq. (by First Class Mail)
  Cornicello, Tendler & Baumel-Cornicello LLP
  Two Wall Street, 20th Floor
  New York, NY 10005-2072

**BROADWAY METRO ASSOCIATES, L.P.**
C/O Albert Bialek Associates
249 West 34th Street, 2nd Floor
New York, NY 100010
212-751-2408

Dated: January 7th, 2010

<u>BY: First Class Mail and Certified Mail Return Receipt Requested</u>
Receipt Number 7009 2820 0004 3223 2697

2626 BWAY LLC
c/o Seymour I. Hurwitz, Esq.
19 W. 44th Street, Suite 1507
New York, New York 10036

NOTICE OF FAILURE TO COMPLY WITH ARTICLE 13 OF LEASE
DATED SEPTEMBER 1, 2006 BETWEEN
BROADWAY METRO ASSOCIATES, L.P. AS LANDLORD AND
2626 BWAY LLC AS TENANT, REGARDING INSURANCE

**PLEASE TAKE NOTICE** that pursuant to Article 13 of the Lease dated September 1, 2006 between Broadway Metro Associates, L.P. as Landlord and 2626 BWAY LLC as Tenant, ("Tenant"), hereinafter referred to as the "Lease," Tenant at all times during the Lease Term and at Tenant's expense, shall provide and maintain in full force and effect, with insurers approved by Landlord, insurance as referred to in Article 13 of the Lease, and provide the Landlord with a copy of the original insurance policies or other appropriate evidence of the existence of all policies or renewal policies bearing notations evidencing the payment of premiums therefore as referred to in Article 13 of the Lease, and under the terms and conditions as more specifically set forth in Article 13 of the Lease, a copy of which is attached hereto and made a part hereof.

**PLEASE TAKE NOTICE** that you have failed to comply with the provisions of Article 13 of the Lease in that you have failed to provide and maintain in full force and effect insurance, as more specifically set forth in and required by Article 13 of the Lease, a copy of Article 13 of the Lease is attached hereto and made a part hereof, with insurers approved by Landlord, and have not provided the Landlord with a copy of the original insurance policies or other appropriate evidence of the existence of all policies or renewal policies bearing notations evidencing the payment of the premiums therefore as referred to in Article 13 of the Lease with insurers approved by Landlord.

**PLEASE TAKE FURTHER NOTICE** that your failure to provide and maintain insurance as required by Article 13 of the Lease, and failure to provide Landlord with a copy of the original insurance policies or other appropriate evidence of the existence of all policies or renewal policies bearing notations evidencing the payment of the premiums therefore as referred to in Article 13 of the Lease with insurers approved by Landlord shall be deemed to be an Event of Default as provided for in Article 19 and 19.1.3 of the Lease if such failure to do so continues for more than thirty (30) days from the date that Tenant receives this written Notice, to wit FEB. 23, 2010 which date is more than the fifth business day after this Notice has been mailed to you by first class mail and certified mail return receipt requested pursuant to Article 39.1 of the Lease.

BROADWAY METRO ASSOCIATES, L.P.
TO: 2626 BWAY LLC
PAGE TWO
NOTICE OF FAILURE TO COMPLY WITH ARTICLE 13 OF LEASE

**PLEASE TAKE FURTHER NOTICE** that you should in accordance with Article 13 of the Lease provide a copy of the original insurance policy(ies) or other appropriate evidence of the existence of all policies or renewal policies bearing notations evidencing the payment of the premiums therefore as referred to in Article 13 of the Lease with insurers approved by Landlord, to the Landlord pursuant to Article 39 of the Lease, c/o Howard W. Segal, P.C., at 845 Third Avenue, Suite 1740, New York, New York 10022 no later than __Feb. 23, 2010__, which date is more than the fifth business day after this Notice has been mailed to you by first class mail and certified mail return receipt requested pursuant to Article 39.1 of the Lease.

Yours etc.,

BROADWAY METRO ASSOCIATES, L.P.
By: SEAVEST MANAGEMENT CORP., General Partner

By: _____
ALBERT BIALEK, President


cc: Seymour I. Hurwitz, Esq., (by First Class Mail and Certified Mail
        Return Receipt Requested, Receipt No. 7009 2820 0004 )
    19 W. 44th Street, Suite 1507                          3223 2703
    New York, New York 10036

cc: John Souto
    c/o 2626 BWAY LLC  (by First Class Mail and Certified Mail
        Return Receipt Requested, Receipt No. 7009 2820 0004 )
    131 Christopher Street, Second Floor                   3223 2710
    New York, New York 10014

cc: 2626 BWAY LLC (by First Class Mail and Certified Mail
        Return Receipt Requested, Receipt No. 7009 2820 0004 )
    131 Christopher Street, Second Floor                   3223 2727
    New York, New York 10014

cc: David Tendler, Esq. (by regular mail)
    Cornicello & Tendler LLP
    116 John Street, Suite 2501
    New York, New York 10038

insufficient fully to satisfy and discharge any such Imposition, and interest and penalties thereon, Landlord may pay the same and the deficiency so paid by Landlord shall be and become immediately due and payable by Tenant to Landlord.

11.3: Landlord has advised Tenant that Landlord has commenced an application for benefits under the Industrial Commercial Incentive Program of the City of New York and Tenant agrees to continue to prosecute such application to obtain the maximum benefits available to the Premises. Landlord agrees to cooperate with Tenant in the pursuing of the application.

### 12. Utility Services

12.1: Tenant shall arrange for and pay all charges for all public or private utility services and all sprinkler systems and protection services at any time rendered to or in connection with the Demised Premises or any part thereof; shall comply with all contracts relating to any such services; and shall do all other things required for the maintenance and continuance of all such services.

### 13. Insurance

13.1: Tenant, at all times during the Lease Term and at Tenant's expense, shall provide and maintain in full force and effect with insurers approved by Landlord: (a) insurance with respect to the Improvements against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending strike, civil commotion, aircraft, vehicles, smoke and other risks from time to time included under "all-risk" policies, in an amount equal to at least 100% of the full replacement value of the Improvements, and in any event in an amount sufficient to prevent Landlord or Tenant from becoming a co-insurer of any loss under applicable policies, which shall be written on a replacement cost basis; (b) public liability and property damage insurance protecting Landlord against any and all liability occasioned by negligence, occurrence, accident or disaster in or about the Demised Premises or any part thereof, or the Improvements now or hereafter erected thereon, or adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, or any appurtenances thereto, in amounts reasonably approved from time to time by Landlord, which amounts at the date hereof shall be, in the case of public liability, $1,000,000 per person and $2,000,000 per occurrence, and in addition an umbrella liability policy in an amount of no less than $5,000,000 and in the case of property damage, $1,000,000; (c) rental interruption insurance which shall equal the annual Basic Rent and Additional Rent to be paid by Tenant hereunder in the succeeding twelve month period;
(d) explosion insurance in respect of any steam and pressure boilers and similar apparatus located on the Demised Premises in amounts reasonably approved by Landlord, which amount at the date hereof shall be $500,000; (e) war risk or terrorism insurance when and to the extent obtainable from the Federal government, any agency thereof or any commercial insurer; (f) appropriate workers' compensation or other insurance against liability arising from claims of workers in respect of and during the period of any work on or about the Demised Premises; (g) if the Demised Premises are located in an area which has been identified by the Secretary of

12

Housing and Urban Development as a flood hazard area, flood insurance in an amount at least equal to the maximum limit of coverage available for the Demised Premises under the National Flood Insurance Act of 1968; and (h) insurance against such other hazards and in such amounts as is customarily carried by prudent owners and operators of similar properties, and as Landlord reasonably may request with the reasonable written consent of the Tenant. In the event of a hazard loss the Landlord "shall cause" the net proceeds of insurance to be released to or made available to Tenant from time to time as reasonably requested to be used in connection with the restoration and repair of the damaged Demised Premises.

13.2: All insurance maintained by Tenant pursuant to this Article 13: (a) shall, except for workers' compensation insurance, name Landlord as an additional party insured, as their respective interests may appear, and shall include an effective waiver by the issuer of all rights of subrogation against any named insured or such insured's interest in the Demised Premises or any income derived therefrom; (b) shall provide that no cancellation, non-renewal, reduction in amount or material change in coverage thereof shall be effective until at least thirty (30) days after receipt by Landlord and Tenant of written notice thereof; and (c) shall be satisfactory in all other respects to Landlord acting reasonably. Any such insurance, at Tenant's option, may be provided through a blanket policy or policies in form and substance satisfactory to Landlord, provided such policies shall provide in a manner reasonably satisfactory to Landlord for specific allocation to the Demised Premises of the coverage afforded by such blanket policy or policies, and provided further that such blanket policy or policies give to Landlord no less protection than that which would be afforded by separate policies.

13.3: Upon the execution of this Lease and thereafter not less than thirty (30) days prior to the expiration date of any policy delivered pursuant to this Article 13, Tenant shall deliver to Landlord copies of the originals or other appropriate evidence of the existence of all policies or renewal policies, as the case may be, required by this Lease, bearing notations evidencing the payment of the premiums therefor.

13.4: If, at any time, Tenant shall neglect or fail to provide or maintain insurance or to deliver insurance policies in accordance with this Article 13, Landlord may effect such insurance as agent for Tenant, by taking out policies in companies selected by Landlord, and the amount of the premiums paid for such insurance shall be paid by Tenant to Landlord on demand. Landlord, in addition to Landlord's other rights and remedies, shall be entitled to recover as damages for any breach of this Article 13 the uninsured amount of any loss, liability, damage, claim, costs and expenses suffered or incurred by Landlord, and shall not be limited in the proof of damages to the amount of the insurance premium not paid by Tenant for such insurance.

13.5: Landlord shall have the right to increase the required limits of the insurance required to be provided by the Tenant hereunder to reflect changes of economic conditions, risk assessment, or other circumstances which in the Landlord's sole discretion, reasonably applied, is necessary or appropriately required to adequately protect the Landlord from unnecessary loss or damage.

13

**Exhibit 2**

```
                                                               1

                   UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK

  IN RE:                           .  Case No. 10-14731-scc
                                   .  Chapter 11
  2626 BWAY, LLC,                  .
                                   .
                Debtor.            .
  . . . . . . . . . . . . . . . . .
                                   .
  BROADWAY METRO                   .  One Bowling Green,
  ASSOCIATES L.P.,                 .  New York, New York 10004
                                   .
                                   .  Tuesday, October 12, 2010
                                   .  11:13 a.m.
  . . . . . . . . . . . . . . . . .

                    TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE SHELLEY C. CHAPMAN
                  UNITED STATES BANKRUPTCY JUDGE

  APPEARANCES:

  For the Debtor:                  ROBERT R. LEINWAND, ESQ.
                                   Robinson Brog Leinwand Greene
                                   Genovese & Gluck, P.C.
                                   875 Third Avenue
                                   New York, New York  10022
                                   (212) 586-4050

                                   ROBERT M. SASLOFF, ESQ.
                                   Robinson Brog Leinwand Greene
                                   Genovese & Gluck, P.C.
                                   875 Third Avenue
                                   New York, New York  10022
                                   (212) 586-4050

  For Broadway Metro               ANDREA J. LAWRENCE, ESQ.
  Associates:                      M. Teresa Daley Law Offices,
                                   P.C.
                                   520 8th Avenue, 24th Floor
                                   New York, New York   10018
                                   (212) 560-3943

                                   M. TERESA DALEY, ESQ.
                                   M. Teresa Daley Law Offices,
                                   P.C.
                                   520 8th Avenue, 24th Floor
                                   New York, New York   10018
                                   (212) 560-3943
```



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An Alexander Gallo Company

                                                          27

1          MS. DALEY:  Prorated.
2          THE COURT:  Well if it's prorated then he's got to
3  pay the prorate for September.  He's got to pay October and
4  he's got to pay what's due on November 1st.  So he's got to
5  pay the prorate for September, plus two months.
6          MR. LEINWAND:  If it's prorated, the stub rent
7  (indiscernible) will pay the --
8          THE COURT:  The stub plus the two months.
9          MR. LEINWAND:  I'll pay the two months.  It -- I
10  don't want -- the argument made -- the argument made and not
11  finally decided by this Circuit or not finally decided by the
12  Third Circuit is that since the payment date is the first day
13  of the month, then the balance of that month is in fact an
14  administration expense, but not a --
15         THE COURT:  An expense for the purposes of
16  365(d)(3)?
17         MR. LEINWAND:  That's correct.  And that's the
18  argument that was made.  That was the argument in -- what was
19  the name of that (indiscernible) in Bali (phonetic) and that
20  was the argument that the Second Circuit has adopted on the
21  Second Circuit level.
22         THE COURT:  All right, here's what I'm going to
23  do.  I'm not going to rule one way or the other on that
24  today.  And we're going to roll that question over into the
25  subsequent hearing.  But clearly, the two payments that have



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An Alexander Gallo Company

28

1  to be made, clearly are the October and the November.  So
2  that's 48,250 times 2.
3          MR. LEINWAND:  Right.  We understand that, Your
4  Honor.
5          THE COURT:  Right?  And that'll be due on the 60th
6  day, which is November 2nd.  Right?
7          MR. LEINWAND:  I've got to add 60 --
8          THE COURT:  It is.
9          MR. LEINWAND:  -- September has 30 days.
10         THE COURT:  October's got 31 days.
11         MR. LEINWAND:  Okay.  There you go.
12         THE COURT:  So, I think November 2nd is the 60th
13 day.  Am I doing it right, Miss Daley?
14         MS. DALEY:  Yes, Your Honor.
15         THE COURT:  Okay.  And look, that's the price of -
16 - that's the cost of renting this courthouse to have a
17 Chapter 11 case.  Otherwise, you get to go back to state
18 court and fight until the cows come home or until somebody
19 renders a final judgment over there.  But if you're filing a
20 Chapter 11 petition and the statute makes clear what your
21 obligations are as a debtor in possession, those have to be
22 complied with before you get to the next step.
23         So the next step is going to be that promptly
24 after the November 2nd day we're going to have an evidentiary
25 hearing to determine either whether the stay should be lifted

