**ROBINSON BROG LEINWAND**
 **GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone No.: (212) 603-6300
**Robert R. Leinwand**
**Robert M. Sasloff**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

                                                        Chapter 11
                                                        Case No. 10-14731 (SCC)

**2626 BWAY, LLC,**

                                Debtor.
-----------------------------------------------------------X

**DEBTOR'S RESPONSE TO LETTER MEMORANDUM OF BROADWAY METRO ASSOCIATES, L.P. SEEKING SURRENDER OF THE DEBTOR'S PREMISES**

TO THE HONORABLE SHELLY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

      **2626 BWAY, LLC,** the debtor and debtor in possession herein (the "Debtor"), by its attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**, as and for its Response ("Response") to the Letter Memorandum of **Broadway Metro Associates L.P.** (the "Landlord"), seeking an Order of this Court Ordering Surrender of the Debtor's Premises,[1] (the "Memo"), respectfully represents as follows:

---

[1] Capitalized terms in this Response take their definitions from the Landlord's motion seeking an Order of this Court granting: (A) Relief from the Automatic Stay pursuant to 11 U.S.C. §362(d)(1) and (d)(2); or Alternatively, (B) Dismissing this Chapter 11 Case Pursuant to 11 U.S.C. §1112(b); and (C) for Related Relief (the "Motion").

1. The Memo was submitted subsequent to an evidentiary hearing on the Motion held on November 9, 2010, where the Court requested that Broadway Metro and the Debtor submit memoranda regarding the Court's authority to immediately order surrender of the Premises. While Broadway Metro continues, even in its latest submission, to color the Debtor and its principle in a negative light before this Court and while the Debtor could respond point by point to the allegations asserted by Broadway Metro, the Debtor wishes to remind this Court that there are two sides to every issue and that if this Court simply focuses on the relief sought herein, that the equities may favor the Debtor, allowing it to pursue its rights in the State court system.

2. The relief requested in the Memo should not be granted because: (A) the relief requested in the Memo is inapposite to the relief sought in the Motion; (B) the relief requested in the Memo is within the province of state law, is not specific to bankruptcy law and the state court is the more appropriate forum for the Landlord's requested relief; and (C) based on the facts of this case, while this Court is statutorily empowered to direct rejection of the Lease, no motion seeking rejection is pending before this Court.

3. In the Motion, the relief requested by the Landlord was for a modification of the automatic stay provisions §362 of the Bankruptcy Code, or alternatively a dismissal of the Debtor's Chapter 11 case. The Landlord did not request immediate surrender of the Premises or a termination of the Lease. The Debtor consented to all of the relief requested in the Motion. The Debtor believes it has substantial state court rights, which it properly preserved through the timely filing of appeals. Granting relief beyond what the Landlord requested in the Motion, simply because it had the catch-all phrase "for such other and further relief"

would irreparably harm the Debtor's rights and could short circuit its appeals. This Court should not prejudice the Debtor by granting the Landlord the extraordinary relief it seeks.

4. The Landlord asserts in the Motion that the bankruptcy filing was made in "Bad Faith." "Obviously, if the Court dismisses the case on the ground that the case should never have been filed at all, it can only remit the landlord to its State remedies, not order the Debtor's eviction under State law. It would be entirely inconsistent with an order of dismissal for the Court to preclude the Debtor from exercising any State remedies it may have to prevent forfeiture of its Lease." *1633 Broadway Mars Restaurant Corp. v. Paramount Group, Inc.* (*In re 1633 Broadway Mars Restaurant Corp.*), 388 B.R. 490, 504-505 (ALG) (Bankr.S.D.N.Y. 2008).

5. Both federal and state courts abhor lease forfeitures. *See e.g. Queens Blvd. Wine & Liquor Corp. v. Blum*, 503 F.2d 202, 206, 797 (2d Cir. 1974); *Zaid Theatre Corp. Sona Realty Co.* 18 A.D.3d 352, 355, N.Y.S.2d 434, 436-437 (1st Dept. 2005).

6. Even though there is no motion seeking relief under §365 of the Bankruptcy Code pending before this Court, "[r]ejection is not the power to release, revoke, repudiate, void, avoid, cancel or terminate, or even to breach, contract obligations. Rather, rejection is a bankruptcy estate's election to decline a contract or lease asset." *In re Lavigne* 114 F.3d 379 (2nd Cir. 1997) (*citing* Executory Contracts in Bankruptcy: Understanding 'Rejection,' Fall, 1988, 59 U. Colo. L. Rev. 845, 846-847)). Section 365(g) of the Bankruptcy Code provides that rejection of an unassumed lease shall be treated as a "breach." "Breach is not termination because, among other things, '[i]f rejection terminates the contract…such termination may have consequences that affect parties other than [the parties] to the contract" *Lavigne* 114 F.3d 379 (*citing* 3 Collier on Bankruptcy §365.09 (Lawrence P. King, *et. al.* eds., 15th ed. 1996).

7. There are other reasons why rejection is not deemed to be termination including that certain types of contracts, such as rent stabilized leases, are entitled to automatic renewal and continuing occupancy, *even after* rejection. *In re Yasin*, 179 B.R. 43, 49 (Bankr. S.D.N.Y. 1995). "The parties must, therefore, resort to state law to determine their rights as a result of the breach, *see In re Blackburn,* 88 Bankr.[273,] 276 [Bankr. S.D. Cal., 1988], and in the case of a lease, the landlord must commence an eviction proceeding in state court and obtain a warrant of eviction; the issuance of the warrant of eviction terminates the landlord-tenant relationship under the law of New York." *Yasin,* 179 B.R. at 50 (*citing N.Y. Real Prop. Acts. Law § 749(3)* (McKinney 1979); *accord In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 304 (2d Cir. 1993); *In re Touloumis*, 170 Bankr. 825, 829 (Bankr. S.D.N.Y. 1994).

8. Further, even if a warrant of eviction is issued, it may be vacated upon good cause or the parties can revive the relationship through their actions or conduct. *Sanshone,* 993 F.2d at 304. Landlord cites to *Comp III, Inc. v. Computerland Corp.,* 136 B.R. 636 (Bankr. S.D.N.Y. 1992) which provides that a wrongfully terminated executory contract may be equitably reinstated by a court. Bankruptcy courts must consider 'whether the termination could have been reversed under a state anti-forfeiture provision or other applicable state law.'" *Broadway Mars* 388 B.R. at 504 (*citing City of Valdez v. Waterkist Corp. (In re Waterkist Corp.)*, 775 F.3d 1089, 1091 (9th Cir. 1985). With various appeals pending, which may reinstate the Lease or the sale contact, the Debtor believes that ordering the surrender of the premises is premature.

9. There is only one instance in §365 of the Bankruptcy Code where the trustee shall immediate surrender its leased premises, *in addition* to having the lease be deemed rejected. Section 365(d)(4) of the Bankruptcy Code provides, in part, for immediate surrender if a motion to assume or reject a lease of nonresidential real property is not made

within one hundred and twenty days from the order for relief. *See 11 U.S.C. §365(d)(4)*. The Petition Date occurred less than eighty days ago.

10. Landlord cites to *Griggs v. 25 Realty Associates, LLC*, 2002 U.S. Dist. LEXIS 5977 (S.D.N.Y. 2002) which explicitly contradicts Landlord's allegations. *Griggs* provides that a roommate of a tenant who lacked privity with her Landlord lacks the protections of the automatic stay provisions of §362 of the Bankruptcy Code, because the landlord and tenant did not possess "a bona fide landlord-tenant relationship" prior to the entry of a warrant of eviction. *Griggs* at *7. Further, even if *Griggs* were applicable, it makes no mention as to the propriety of requiring immediate surrender or whether the issue was argued on appeal. In *In re Flexpak, Inc.,* 49 B.R. 641 (Bankr. S.D.N.Y. 1985), *Manhattan King David Restaurant Inc. v. Levine* 154 B.R. 423 (S.D.N.Y.,1993), and *In re Cobham Enterprises, Inc.* 72 B.R. 779 (Bankr. S.D.N.Y. 1987), each debtor was directed to surrender its premises because they failed to timely make a motion to assume their leases pursuant to §365(d)(4) of the Bankruptcy Code. The Debtor still has over forty days before the relief provided in §365(d)(4) of the Bankruptcy Code may be granted.

11. Landlord cites to *In re Sonnax Industries*, 907 F.2d 1280, 1986 (2d Cir. 1990), however that case only pertains to relief from stay sought in judicial proceedings, when a party is seeking to continue litigation in another forum. Landlord cites to *In re Seven Stars Restaurant, Inc.,* 122 B.R. 213 (Bankr. S.D.N.Y. 1990), *In re Scarsdale Tires, Inc.* 47 B.R. 478 (Bankr. S.D.N.Y. 1985), and *In re Mad Lolo LLC*, 2009 Bankr. LEXIS 1333 (Bankr. S.D.N.Y. 2009). All of these cases dealt with debtors whose leases terminated pre-petition, but the Debtor herein has an appeal pending in state court which deals with the Landlord's alleged pre-petition termination. The Debtor has rights under the Lease and under §365 of the Bankruptcy Code. Further, none of the above cases required the debtor to surrender the premises, but rather modified the automatic stay for a creditor to enforce its rights in state court. *Scarsdale Tires* expressly contradicts Landlord's relief requested: "[t]he landlord

countered the debtor's motion with an oral application for an order directing the debtor to vacate the premises and to turn over possession to the landlord. This is a matter which is more appropriately determined in a state court landlord-tenant proceeding, where evictions are enforced by local sheriffs. The United States Marshals need not be given this additional task of enforcing lease evictions." *In re Scarsdale Tires, Inc.* 47 B.R. at 481.

12. The Lease has forty-four years left on its term. The Landlord is attempting to appropriate the Debtor's $525,000 contract deposit in addition to the Debtor's security deposit. The Debtor contends that, prior to the alleged termination of the Lease, Landlord tortuously interfered with the Debtor's execution of an extraordinarily lucrative sublease with Urban Outfitters. The fact that the Debtor did not pay rent on use and occupancy after 60 days clearly permits this Court to modify the stay provisions of §362 of the Bankruptcy Code, but does not permit or require this Court's direction to turn over immediate possession of the Premises to the Landlord, and terminate the Debtor's interest in the Lease and effectively usurp the state court by ending the landlord and tenant relationship. The equities in this case do not clearly favor granting relief not supported by public policy, which abhors lease forfeitures, not provided for by statute, is premature and is based on unresolved state law issues that can be effectively and efficiently adjudicated by a specialized non-bankruptcy tribunal.

**WHEREFORE**, the Debtor respectfully seeks the entry of an order denying the relief requested in the Memo and granting it such other and further relief as seems just, proper and equitable.

**DATED:**    New York, New York
          November 19, 2010

**ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
Attorneys for Debtor
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: (212) 603-6300


By: /S/Robert R. Leinwand_____
 **Robert R. Leinwand**