```
 1                   UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2
     IN RE:                        .   Case No. 10-14731-scc
 3                                 .   Chapter 11
     2626 BWAY, LLC,               .
 4                                 .
                     Debtor.       .
 5   . . . . . . . . . . . . . .   .
                                   .
 6   BROADWAY METRO                .   One Bowling Green,
     ASSOCIATES L.P.,              .   New York, New York 10004
 7                                 .
                                   .   Tuesday, October 12, 2010
 8                                 .   11:13 a.m.
     . . . . . . . . . . . . . .   .
 9
                     TRANSCRIPT OF MOTION HEARING
10         BEFORE THE HONORABLE SHELLEY C. CHAPMAN
               UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtor:               ROBERT R. LEINWAND, ESQ.
13                                 Robinson Brog Leinwand Greene
                                   Genovese & Gluck, P.C.
14                                 875 Third Avenue
                                   New York, New York  10022
15                                 (212) 586-4050

16                                 ROBERT M. SASLOFF, ESQ.
                                   Robinson Brog Leinwand Greene
17                                 Genovese & Gluck, P.C.
                                   875 Third Avenue
18                                 New York, New York  10022
                                   (212) 586-4050
19
     For Broadway Metro            ANDREA J. LAWRENCE, ESQ.
20   Associates:                   M. Teresa Daley Law Offices,
                                   P.C.
21                                 520 8th Avenue, 24th Floor
                                   New York, New York   10018
22                                 (212) 560-3943

23                                 M. TERESA DALEY, ESQ.
                                   M. Teresa Daley Law Offices,
24                                 P.C.
                                   520 8th Avenue, 24th Floor
25                                 New York, New York   10018
                                   (212) 560-3943
```



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1  APPEARANCES
    (continued)
 2
    Audio Operator:              Chantel
 3
    Transcription Service:       Esquire
 4                               One Penn Plaza
                                 Suite 4715
 5                               New York, N.Y. 10119
                                 (212) 687-8010
 6
    Proceedings recorded by electronic sound recording;
 7  transcript produced by transcription service.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1                    (Time Noted:  11:13 a.m.)

 2               THE COURT:  All right folks, I think since you

 3    came in a little later you need to give your cards to the

 4    court reporter.

 5               All right, I'm ready when you are.

 6               MS. LAWRENCE:  Good morning, Your Honor.

 7               THE COURT:  Good morning.

 8               MS. LAWRENCE:  My name is Andrea Lawrence.  This

 9    is my colleague, Teresa Daley.  We represent Broadway Metro

10    Associates.  Broadway Metro is a creditor of the debtor as

11    well as the landlord of the premises in which the debtor is

12    currently occupying at 2626 Broadway in New York, New York.

13               We are here with respect to our motion to vacate

14    the automatic stay and we believe that there's good cause

15    that exists, or alternatively, it was filed in bad faith.

16    First off, our client, Broadway Metro, already terminated the

17    lease by virtue of a notice of termination back in June of

18    2010.  It was effective on June 28th.

19               So pretty much it's our position that the debtor

20    no longer has any --

21               THE COURT:  When you say -- let me stop you, --

22               MS. LAWRENCE:  Uh-huh, (affirmative).

23               THE COURT:  -- because I really want to try to

24    understand the facts here.

25               MS. LAWRENCE:  Sure.
```



```
1              MS. LAWRENCE:  It was a notice.  I believe it was
2   sent on June 22nd or June 23rd of 2010 and it effectively
3   terminated as of June 28th of 2010.
4              THE COURT:  And you say effectively terminated on
5   June 28th?
6              MS. LAWRENCE:  It was a notice of termination by -
7   - that was sent pursuant to the lease.
8              THE COURT:  Okay.
9              MS. LAWRENCE:  And I can backtrack if Your Honor
10  needs me to do so.  There's been about eight litigations
11  going back and forth since 2008 between the debtor and our
12  client.  Our client has pretty much been successful with
13  respect to all the motions.  Everything it's prevailed upon
14  except for one technicality in civil court.  Where we left
15  off there was a Yellowstone Injunction.  It was the third
16  Yellowstone injunction action.
17             THE COURT:  Explain to me what a Yellowstone
18  injunction is.
19             MS. LAWRENCE:  A Yellowstone Injunction is when a
20  tenant is in default of its lease obligation the landlord
21  will serve a notice of default upon the tenant.  The tenant
22  then can either do nothing and be subject to going to civil
23  court to fight its leasehold rights.
24             Or it can make what's called a Yellowstone
25  injunction.  And that's essentially an application to the
```



1  Supreme Court to toll its rights to cure pending a hearing.

2  Usually it's a full-blown hearing with witnesses for the

3  court to determine whether or not the tenant actually has the

4  ability and desire to cure.  It's usually only offered to

5  commercial tenants.

6          So what happened here is, our client had served

7  three notices of default upon this tenant in April of 2010.

8  The grounds on the notices were failure to provide access,

9  failure to maintain insurance for the property, and failure

10  to cure -- there's a couple of outstanding ECB violations on

11  the building.

12          They made a Yellowstone application that was heard

13  before Judge Branston (phonetic) in the State Supreme Court

14  in June of 2010 in support of a hearing.  After which, Judge

15  Branston denied their application for Yellowstone Injunction.

16  At which point we -- or our client moved in civil court,

17  brought a holdover proceeding.

18          After they had already terminated -- or that they

19  had already terminated the lease, the tenant did not vacate

20  and then they brought a proceeding in civil court to have the

21  tenant removed from the property.  What happened with respect

22  to that action that was heard before the civil court in

23  August of 2010, the debtor attempted to get that case

24  dismissed by was unsuccessful and Judge Goin (phonetic)

25  awarded the landlord a possessory judgment.  Before we could

1  execute upon the warrant, the tenant filed for bankruptcy

2  protection on September 3rd.

3          THE COURT:   All right, so they're taking the

4  position that -- and I did read the papers, but it's a --

5          MS. LAWRENCE:   Okay.

6          THE COURT:   -- bit of a saga.  So that's why --

7          MS. LAWRENCE:   It's a -- right, it's a very long

8  and protracted history.

9          THE COURT:   -- that's why I wanted to hear about

10 it again today.  They're taking the position that because

11 there was not a warrant of eviction issued that their rights

12 under the lease are not yet cut off.

13         MS. LAWRENCE:   Right.  It's our -- right.  And

14 it's our position, and we quoted to a case, *In Re Seven Stars*

15 *Restaurant* that notwithstanding warrant -- the fact that the

16 warrant of eviction had not yet issued, by virtue of the fact

17 that Broadway Metro sent out a notice of termination pursuant

18 to the lease under (indiscernible) bankruptcy laws, that that

19 lease was effectively terminated on June 28th and that the

20 debtor no longer has any rights to the premises, possessory,

21 legal, or equitable rights.

22         THE COURT:   All right.  This is going to take a

23 while, but I wanted to hear --

24         MS. LAWRENCE:   Yeah.  Oh sure.

25         THE COURT:   -- and basically I consider that



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1  initial statement and then I want to hear from the debtor.

2  Because, I mean off the top, you're not paying rent.

3         MS. LAWRENCE:  And they haven't paid.  I hate to

4  interrupt.  They haven't paid rent since August -- I think

5  August of 2008.

6         THE COURT:   All right.  So you're not paying

7  rent.  You -- you know, even if everything that you say is

8  true, in order for you to be entitled to stay here, you have

9  to pay rent.  What am I missing?

10        MR. LEINWAND:  Good morning, Your Honor.

11        THE COURT:   Good morning.

12        MR. LEINWAND:  Robert Leinwand of Robinson Brog.

13  With me is my partner, Robert Sasloff.  Several prongs of the

14  application of the landlord, procedurally a lot of defects

15  with respect of filing a motion to dismiss without serving

16  all parties, without giving the 21 days as required, motion

17  to modify the stay without serving the requisite parties.

18        THE COURT:   Who did she serve?

19        MR. LEINWAND:  She served five or six people, not

20  pursuant to, I guess it's Bankruptcy Rule 4011 which requires

21  service upon the 20 largest or people who've filed notices of

22  appearance.  She -- the landlord filed -- in her motion she

23  has CC'd the motion upon --

24        MS. LAWRENCE:  Your Honor, I can tell you who --

25  where --



```
 1              THE COURT:   Well let him finish --
 2              MS. LAWRENCE:   Okay.
 3              THE COURT:   Let him finish the initial list --
 4              MR. LEINWAND:   Yeah, but --
 5              THE COURT:   -- and then I'll hear yours.
 6              MR. LEINWAND:   Okay.  So, I mean procedurally,
 7   that's the problem.
 8              THE COURT:   That's why you're not paying rent?
 9              MR. LEINWAND:   No.  No.  I'm just -- I'm getting
10   beyond that because Your Honor cut to the underbelly of the
11   whole argument.  With respect to the bad faith and with
12   respect to whether or not Seven Stars, which was a 1990
13   decision by Judge Schwartzberg (phonetic) which has not been
14   followed by Judge Brosman (phonetic) in MAS and by Judge
15   Gropper (phonetic) in P.J. Clark following the Second Circuit
16   clearly indicates that we have the right to resurrect.  We
17   filed a timely notice of appeal.  So we win on all of those
18   bases.  I'm fully cognizant of that and I'm not going to say
19   very much other than that.  The underbelly --
20              THE COURT:   You --
21              MR. LEINWAND:   -- the underbelly --
22              THE COURT:   -- but you -- your position is that
23   you win?
24              MR. LEINWAND:   Yeah.  Well, I believe that the law
25   so provides that we have a right under 541, a property right
```



1 that is protected by the automatic stay.  That we will

2 prevail with respect of --

3          THE COURT:   All right.  So, --

4          MR. LEINWAND:  -- of those two motions.

5          THE COURT:   -- so that's one bucket.  So --

6          MR. LEINWAND:  Okay.  The real problem in this

7 case is that the debtor has been thwarted in its operation of

8 the business.  The debtor has been thwarted because of the

9 landlord's refusal to accept a subtenant.  That subtenant,

10 Urban Outfitters, would have provided the debtor with, over

11 the term of the lease, $25 million, over and above his

12 obligations to the landlord.  That -- there is an action

13 pending in the state court seeking damages with respect to

14 those actions.

15          The landlord had received a security deposit in

16 excess of $1.1 million, 525,000 of those has been taken and

17 applied with respect to an option to purchase the premises.

18 But we do not know about the other monies there.  We have no

19 problem with respect of getting an accounting and allowing

20 the use of those monies towards the obligations pursuant to

21 365(d)(3), which Your Honor alluded to and I know that is a

22 precondition to continuing of the operations.

23          Under these circumstances two things.  One,

24 365(d)(3) authorizes this Court to forgive the performance

25 for the first 60 days of those obligations.  Those 60 days

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1  have not yet been reached.  Two, the debtor has --

2            THE COURT:   What's the date of the filing?

3            MR. LEINWAND:   September 3rd of this year.

4            The debtor has indicated that it would pay the

5  landlord the costs of maintaining the premises.  That is

6  paying the real estate taxes, that is paying the

7  superintendent, and that is paying the insurance on the

8  property, which would maintain the status quo pending a

9  resolution as to whether or not there is a lease in

10 existence.

11           The difficulty with this case is that the landlord

12 is saying there is no lease and yet wants to be paid the rent

13 reserved under the lease that doesn't exist.  The debtor is

14 claiming there is a lease and is being required to pay money

15 which it doesn't presently have.

16           The principal of the landlord [sic] is willing to

17 make a capital contribution to assure that the landlord will

18 not suffer any diminution in value, by maintaining the

19 premises pending a resolution as to whether or not there is

20 in existence a lease.  Because the debtor believes, and

21 obviously the landlord believes, that this property has

22 substantial value and the debtor is attempting to maintain

23 that value.

24           THE COURT:   But to what end?  What's the plan

25 going to be here?



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An Alexander Gallo Company

1       MR. LEINWAND:  The debtor has been attempting, and

2   was successful to a degree, in leasing it to a triple A

3   tenant, Urban Outfitter, which subsequently have moved across

4   the street and is very profitable and operating profitably.

5   And it believes that it can be able to either assume the

6   lease with the appropriate funding by third parties to pay

7   all of the arrearages under the lease and either maintain the

8   lease for itself or assume and assign the lease to a third

9   party, which third party will operate this lease which exists

10  for an additional 44 years.  So that we have a building which

11  -- which when I went to law school was a movie theater down

12  the block, and now is being converted into retail space.  The

13  retail space --

14      THE COURT:   You think someone in this economy is

15  going to take an assumption of a 44 year lease?

16      MR. LEINWAND:  I think so.  I think that this

17  property has significant value and --

18      THE COURT:   It obviously does or you folks

19  wouldn't be fighting over it so --

20      MR. LEINWAND:  And it's on Broadway.  It's on the

21  upper west side.  It is a large building for a large retail

22  area.  And accordingly, there is value to it.

23      The landlord has prevented the debtor from going

24  to the building department and the building department will

25  not allow the debtor to renew permits, to amend plans,

1  because the landlord has placed a hold on all of that.  So

2  that we are in a position where we are in a limbo state

3  because there is a cloud as to the existence of the lease.

4         The landlord believes that the gravamen of the

5  nonmonetary default that was found by the State Court was the

6  lack of insurance.  The landlord believes that there was

7  always insurance on the premises.  Not only was there

8  insurance on the premises, but that the landlord had in fact

9  utilized a portion of the security deposit to maintain

10  insurance on the premises and never advised the State Court

11  that there was insurance on the premises.  And the basis for

12  the State Court deeming that there was a default was the lack

13  of insurance.  When in fact, there was insurance on the

14  premises and that insurance was in fact a curable default.

15         That's what Yellowstone's all about.  Yellowstone

16  injunctions are injunctions that enjoin the exercise of

17  landlord's rights when there are nonmonetary defaults.  The

18  insurance was a nonmonetary default.

19         The State Court deemed that the lack of insurance

20  was a noncurable default because there was a time when no

21  insurance was on the premises and during that period of time

22  anything could have happened and you can't now cure by doing

23  that.  When in fact, the debtor believes -- and we have

24  issued appropriate subpoenas to the landlord, to the

25  insurance carriers, and to the brokers to determine that

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   there was in fact insurance on the premises.

2           THE COURT:   All right.   Let me go back to

3   365(d)(3), all right.   So the statute says that I can extend

4   for cause the time for performance that arises within the 60

5   days after the date of the order for relief, but the time for

6   performance shall not be extended beyond such 60-day period.

7   Right?

8           MR. LEINWAND:   That's what it says, Your Honor.

9           THE COURT:   Okay.   So even assuming that I were

10  to find that cause exists -- which I'm not at all convinced

11  as I'm sitting here now that cause exists -- but even if I

12  were to find that cause exists, that means that the debtor

13  would have to become current on the 60th day.   Right?

14          MR. LEINWAND:   The debtor would have to become

15  current on the 60th day.

16          THE COURT:   Would have to cure the whole post-

17  petition?

18          MR. LEINWAND:   That's correct, Your Honor.   That's

19  what the statute says.

20          THE COURT:   That's what the statute says.   I have

21  to follow the statute.

22          MR. LEINWAND:   There -- without dancing around too

23  much, if we --

24          THE COURT:   You're dancing.   You got to, you

25  know, you can't --



1           MR. LEINWAND:  The first --

2           THE COURT:  You can't dance because the statute

3    says --

4           MR. LEINWAND:  Well you can dance a little bit.

5           THE COURT:  -- what it says.

6           MR. LEINWAND:  You can dance a little bit.

7           THE COURT:  I can only dance on the cause.

8           MR. LEINWAND:  You can dance on 363(d)(3) also

9    (indiscernible) sub (indiscernible) rent.  You know, we filed

10   on the 3rd.  Rent is due on the 1st.  The first month rent is

11   in fact the administrative expense.  It's not a 363(d)(3)

12   expense, and therefore what happens is on the 60th day after

13   the filing our obligation would not be to pay September, but

14   would be to pay October and November.

15          THE COURT:  So October and November.  What's it,

16   $48,000 a month?

17          MR. LEINWAND:  That's correct.  That'd be --

18          MS. LAWRENCE:  It's actually $48,250.

19          MR. LEINWAND:  It's --

20          THE COURT:  I was rounding.

21          MR. LEINWAND:  Ninety-six thousand, five --

22          THE COURT:  Ninety-six thousand (96,000).

23          MR. LEINWAND:  -- hundred dollars ($96,500).

24          THE COURT:  Right.  So on November 1st, that's

25   what he would have to come --



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An Alexander Gallo Company

1           MR. LEINWAND:  Well on November 3rd -- on November

2  5th, whatever --

3           THE COURT:  Okay.

4           MR. LEINWAND:  -- it is, we'd have to come up with

5  --

6           THE COURT:  Right.  On the 60th day --

7           MR. LEINWAND:  On the 60th day --

8           THE COURT:  -- you have to come up with --

9           MR. LEINWAND:  -- we would have to come up with

10  $96,000.

11          THE COURT:  All right.

12          MR. LEINWAND:  Based upon your reading of the

13  statute.  Unless -- unless Your Honor would use equitable

14  powers because of the facts and circumstances of this case

15  when in fact the debtor is alleging that it is here because

16  of the landlord's actions.  And further that the landlord has

17  a security deposit of $1.1 million which can be used.  And in

18  lieu of the payment of the rent, Your Honor could grant to

19  the landlord an administrative expense to which the debtor

20  would not object to that administrative expense fixed at the

21  rent reserve under the least, the full $48,250.

22          THE COURT:  Okay.  Let me hear from Miss Lawrence.

23          MS. DALEY:  Your Honor, I'm Teresa Daley and if I

24  could respond?

25          THE COURT:  Yes, Miss Daley.

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1        MS. DALEY:  First of all, counsel indicates that

2   we're holding a security deposit of over a million dollars.

3   Well maybe because counsel is new to this case, and I've been

4   dealing with it now for quite some time, that statement is

5   inaccurate.  There was initially a security deposit posted

6   when the lease was first entered into.

7        THE COURT:  Which was what date, Miss Daley?

8        MS. DALEY:  That was at the end of 2006.

9        THE COURT:  Okay.

10        MS. DALEY:  And then in 2008 -- in August of 2008

11   the debtor decided that they were going to stop paying rent.

12   They weren't complying with other provisions of the lease.

13   The lease had a provision in there that gave them an option

14   to purchase the property.  So under the terms of that option

15   provision they had to pay a deposit on a contract.  And the

16   parties agreed at that time to take $500,000 and to take it

17   from the security deposit and apply it to their contract

18   deposit, leaving approximately $500,000 left.  The contract

19   that --

20        THE COURT:  Do you have correspondence that

21   reflects that?

22        MS. DALEY:  Oh yes, Judge.

23        THE COURT:  Is that anywhere in the --

24        MS. DALEY:  It's not in the papers --

25        THE COURT:  -- in the submission?

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1           MS. DALEY:  Because --

2           THE COURT:  Okay.

3           MS. DALEY:  -- we didn't believe that this --

4           THE COURT:  Okay.

5           MS. DALEY:  -- was going to come up at this --

6           THE COURT:  All right.

7           MS. DALEY:  -- moment.

8           MR. LEINWAND:  We acknowledge that, Your Honor, so

9    --

10          THE COURT:  Okay.  Very well.

11          MS. DALEY:  And then after that --

12          THE COURT:  Right.

13          MS. DALEY:  -- when the contract to purchase the

14   building -- the debtor, whose sole principal is Mr. John Soto

15   (phonetic) who is not a novice here and has a lot of

16   experience running through the court system, both state and

17   federal, because he also had his own bankruptcy years ago,

18   didn't comply with the contract, defaulted, didn't appear for

19   closing.  And that was litigated before State Court.  And per

20   State Court order, we were entitled to keep the 500,000 for

21   breach of the contract --

22          THE COURT:  Okay.  So then --

23          MS. DALEY:  -- to purchase the building.

24          THE COURT:  -- you have the remainder of the

25   security deposit.



1        MS. DALEY:  Then we have 500,000 left.

2        THE COURT:  Right.

3        MS. DALEY:  But then again --

4        THE COURT:  He's not paying rent.

5        MS. DALEY:  -- he hadn't paid rent from August of

6   2008.  So at some point, I believe it was in 2009 or the

7   beginning of 2010, I don't have the date in front of me, the

8   landlord drew down on the bal- -- on what was left on the

9   security --

10       THE COURT:  And that was pursuant to the lease?

11  You were --

12       MS. DALEY:  Correct.

13       THE COURT: -- permitted to do that?

14       MS. DALEY:  Correct.  So we did that.

15       THE COURT:  So it's gone?

16       MS. DALEY:  So it's gone.  So there is no security

17  deposit --

18       THE COURT:  Okay.

19       MS. DALEY:  -- and there has not been a security

20  deposit for quite some time.  That's one thing.

21       The other thing, Your Honor, is that the debtor

22  knew that there were various terms that they needed to comply

23  with under the terms of the lease agreement.  One of them

24  which they're talking about as far as subleasing, they don't

25  have an absolute right that they can go out and sublease this

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGalloCompany

1  building.   They need the landlord's consent.

2         When they refer to the Urban Outfitters proposed

3  sublease or in fact, sublease, they never got the landlord's

4  consent.   Urban Outfitters, when they found out that the

5  debtor here had been just leading them down the road thinking

6  that they had the landlord's consent, when they found out

7  that they didn't have the landlord's consent after months and

8  months of negotiations, and also from what I understand,

9  months and months where the debtor was supposed to have done

10  certain things, Urban Outfitters pulled out.   Said I'm not

11  dealing with Mr. Soto.   We're not dealing with this debtor.

12  So at that point, which was back in 2009 -- I believe it was

13  in the spring or the summer of 2009 -- they walked away.

14         We went in to court in August I believe of 2009

15  before Judge Branston initially, requesting various

16  injunctive relief.   One of the things we requested is to stop

17  the debtor from submitting documents to the Department of

18  Buildings and somehow documents that were submitted contained

19  forged signatures of my client.

20         When counsel just referred to that the Department

21  of Buildings won't permit them to submit any applications.

22  The reason they won't submit them is because they have to go

23  first to my client's principal in order for them to review it

24  and for them to sign off and contact the DOB to submit the

25  application.

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1             This debtor, through Mr. Soto, does whatever

2    wants, whenever he wants with total disregard for the fact

3    that my client owns the building and that all he had was a

4    lease.  Now this past summer when we had served the notices

5    to cure they did go in and they did the Yellowstone.

6             I was the attorney before Judge Branston on a

7    four-day hearing.  Mr. Soto testified on cross-examination

8    for about two -- two-and-a-half days.  The Court found him to

9    be incredible.  The Court denied the application for the

10   Yellowstone and found that it was an incurable default

11   because up until the last day that we were before Judge

12   Branston they had yet to produce any sort of an insurance

13   policy.  So the judge issued a decision.  I believe it's

14   attached here.

15            The judge also ordered them to pay use and

16   occupancy.  Now they didn't comply with Judge Branston's

17   order.  We terminated the lease, per Judge Branston's

18   decision.  We were able to terminate.  The lease was

19   terminated.  They continued in possession.  They didn't do

20   anything as far as trying to contact us to see if anything

21   else could be resolved or try to go forward in any other way.

22            And we went to civil court -- to the state civil

23   court on a holdover proceeding.  They then come in and try to

24   make an application to dismiss in civil court, which is part

25   of what they do constantly.  And the judge in civil court

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   directed them again to pay use and occupancy.  Gave them time

2   to put in opposition papers on our cross-motion.  And they

3   didn't do that.  They didn't pay the use and occupancy.

4           The judgment was granted by Judge Oy (phonetic).

5   We have a judgment of possession.  We requested the issuance

6   of a warrant and lo and behold, they filed the bankruptcy.

7           Now at this point, they've already violated two

8   court orders in state court, albeit that they filed notices

9   of an appeal.  They filed the notice of appeal from the case

10  back in 2009 with regard to the breach of the contract to

11  purchase, but they haven't perfected.  They have filed other

12  notices of appeal, they haven't done anything to perfect.

13          He goes from counsel to counsel.  If you look at

14  the list of the creditors, he owes at least, what four or

15  five attorneys in this city a lot of money for counsel fees.

16  The list of creditors also, long list -- it looks like a long

17  list of creditors.  But the majority of them are entities

18  that Mr. Soto has formed apart from this entity.

19          So at this point, Judge, we either need to be able

20  to go back to state court to have the issues litigated -- for

21  example, there's a tortious interference case that they

22  started.

23          THE COURT:  This is with respect to the Urban

24  Outfitters sublet?

25          MS. DALEY:  Correct.  The court was ready to



1  render a decision on that on those mot- -- on the motions and

2  cross-motions.  The court didn't do it because they filed the

3  bankruptcy, although they're the ones that started it, so

4  they really should be able to pursue that in state court.

5          But as far as my client is concerned, he can't

6  defend at this point unless the stay is vacated.  The stays

7  here should be vacated.  We should be permitted to go back to

8  state court and let the state court do what the state court

9  needs to do.

10          But in the interim, they should be directed for

11  the third time to pay use and occupancy.  They should not be

12  permitted to sit there.

13          The building is deteriorating.  The building still

14  has certain violations on it.  My client's hands are tied.

15  He can't go in and do anything.  They won't give over

16  possession.  Basically, they're holding the building hostage,

17  that's what they're doing.

18          THE COURT:  Does your client have access to the

19  building?

20          MS. DALEY:  No, Judge.

21          THE COURT:  Why doesn't he have access to the

22  building, I'm asking?

23          MS. DALEY:  Your Honor, if I may take a sip of

24  water?

25          THE COURT:  Of course.



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1              MS. DALEY:  Thank you.
 2              MALE SPEAKER:  Yes.  Yeah, Judge, it's his
 3  building whenever he wants it.
 4              THE COURT:  Sir, could you identify yourself?
 5              MR. LEINWAND:  Sir?
 6              THE DEBTOR:  Yes, I'm John Soto.  I'm the
 7  principal --
 8              THE COURT:  All right.
 9              THE DEBTOR:  -- on 2626 Broadway.
10              THE COURT:  It strikes me that the landlord needs
11  to have access to the building.
12              THE DEBTOR:  If you want (indiscernible).
13              MR. LEINWAND:  I'm -- we're advised that the
14  landlord has access to the building, always has access to the
15  building.
16              MS. DALEY:  Really?  When?
17              THE DEBTOR:  What?
18              MR. LEINWAND:  When?
19              THE DEBTOR:  Whenever he asks to get in --
20              MS. DALEY:  Unimpeded?  No.
21              THE DEBTOR:  -- Your Honor.
22              MR. LEINWAND:  We will -- whenever we get a
23  request for access to the building, Your Honor can direct,
24  and I will so direct my client that they can have access to
25  the building.
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1      THE COURT:  Well I'm going to direct you right now

2   that when the landlord wants access to the building that you

3   make reasonable accommodation to allow the landlord to have

4   prompt access to the building, period, full stop.

5      MR. LEINWAND:  That's fine.  We unders- --

6      MS. DALEY:  And not just that, Your Honor, but

7   also when my client personally goes he has his engineer go

8   because they need to --

9      THE COURT:  Of course.

10      MS. DALEY:  -- engineer/architect.  The last time,

11   and that was part of what was before Judge Branston on that

12   Yellowstone, was when we had that notice to cure because they

13   wouldn't give us the access.  The problem is, Mr. Soto won't

14   let anybody go in other than my client's principal.  That

15   can't be permitted.

16      THE COURT:  Well as long as the principal is there

17   and he's stating that he's bringing someone in with him to

18   perform that kind of a service, then he's got to be permitted

19   to get in.  But look, on the record that I have today, Miss

20   Daley is arguing very strenuously, but I don't have an

21   evidentiary record yet.  But --

22      MS. DALEY:  That was one of the things we were

23   going to request, Judge.

24      THE COURT:  Okay.

25      MS. DALEY:  To have a hearing.



```
 1              THE COURT:  Right.  So I think that unless you

 2    want to respond to the argument, the position that has been

 3    taken with respect to the security deposit, because you

 4    acknowledged the -- right now, there's no security deposit.

 5              MR. LEINWAND:  Your Honor, we don't know.  I

 6    respect Miss Daley.  I know Miss Daley.  I don't question

 7    that she said that.  We have issued subpoenas to determine

 8    when the security deposit was applied, how it was applied,

 9    and --

10              THE COURT:  She just told you.

11              MR. LEINWAND:  I hear it.  I hear it.  But we

12    would like to get documentary evidence that that is in fact

13    the fact.

14              MS. DALEY:  That was testified to before Judge

15    Branston in state Supreme Court on the record.  There were

16    documents submitted.

17              MR. LEINWAND:  Fine.

18              MS. DALEY:  As I said, you know, you've come in at

19    the last moment --

20              MR. LEINWAND:  I hear you.

21              MS. DALEY:  But --

22              MR. LEINWAND:  I just --

23              THE COURT:  Look, let -- you can't talk to each

24    other.  You just have to talk to me.

25              MR. LEINWAND:  Do it nicely.  Yeah, I just -- if
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1  that's the fact, if I had documentary -- you asked to

2  respond.  I have no personal knowledge that the million

3  dollars has been --

4           THE COURT:  All right, Miss Daley, this is what

5  we're going to do for the first step, okay.  I think

6  365(d)(3) is very clear.  So I'm going to ask Miss Daley to

7  provide documentation to the debtor with respect to the

8  application of the remainder of the security deposit after

9  the initial 500,000, which I think they agree with you on

10 that.  So it will be the rundown of the remainder of the

11 security deposit.  Okay?

12          So that being said, there's nothing that you could

13 apply to offset against the accrual of the post-petition

14 rent.  So under 354(d)(3) the debtor has to pay post-petition

15 rent on the 60th day in the full amount that's due and owing,

16 which I think is going to be, you know, putting to one side

17 the issue with respect to the partial month, which we can

18 leave for another day, at a minimum, right, it has to be the

19 two months' rent.

20          MS. DALEY:  September you're talking about?

21          THE COURT:  Well we're talking about September.

22 He's making the argument that because you filed on September

23 3rd, --

24          MS. DALEY:  Right, it's prorated.

25          THE COURT:  Sorry?



1          MS. DALEY:  Prorated.

2          THE COURT:  Well if it's prorated then he's got to

3    pay the prorate for September.  He's got to pay October and

4    he's got to pay what's due on November 1st.  So he's got to

5    pay the prorate for September, plus two months.

6          MR. LEINWAND:  If it's prorated, the stub rent

7    (indiscernible) will pay the --

8          THE COURT:  The stub plus the two months.

9          MR. LEINWAND:  I'll pay the two months.  It -- I

10   don't want -- the argument made -- the argument made and not

11   finally decided by this Circuit or not finally decided by the

12   Third Circuit is that since the payment date is the first day

13   of the month, then the balance of that month is in fact an

14   administration expense, but not a --

15         THE COURT:  An expense for the purposes of

16   365(d)(3)?

17         MR. LEINWAND:  That's correct.  And that's the

18   argument that was made.  That was the argument in -- what was

19   the name of that (indiscernible) in Bali (phonetic) and that

20   was the argument that the Second Circuit has adopted on the

21   Second Circuit level.

22         THE COURT:  All right, here's what I'm going to

23   do.  I'm not going to rule one way or the other on that

24   today.  And we're going to roll that question over into the

25   subsequent hearing.  But clearly, the two payments that have



1  to be made, clearly are the October and the November.  So

2  that's 48,250 times 2.

3                  MR. LEINWAND:  Right.  We understand that, Your

4  Honor.

5                  THE COURT:  Right?  And that'll be due on the 60th

6  day, which is November 2nd.  Right?

7                  MR. LEINWAND:  I've got to add 60 --

8                  THE COURT:  It is.

9                  MR. LEINWAND:  -- September has 30 days.

10                 THE COURT:  October's got 31 days.

11                 MR. LEINWAND:  Okay.  There you go.

12                 THE COURT:  So, I think November 2nd is the 60th

13 day.  Am I doing it right, Miss Daley?

14                 MS. DALEY:  Yes, Your Honor.

15                 THE COURT:  Okay.  And look, that's the price of -

16 - that's the cost of renting this courthouse to have a

17 Chapter 11 case.  Otherwise, you get to go back to state

18 court and fight until the cows come home or until somebody

19 renders a final judgment over there.  But if you're filing a

20 Chapter 11 petition and the statute makes clear what your

21 obligations are as a debtor in possession, those have to be

22 complied with before you get to the next step.

23                 So the next step is going to be that promptly

24 after the November 2nd day we're going to have an evidentiary

25 hearing to determine either whether the stay should be lifted

1   under 362(d)(1) or whether this case should be dismissed as a

2   bad faith filing.  Because everything that's been said today,

3   you know, some of which if true, I think could go to,

4   certainly go to a bad faith filing.

5         Under 362(d)(1), as I'm sure you know, you have to

6   make a showing that there is equity and that it's necessary

7   to an effective reorganization.  And so that's two parts.

8   One that there's equity, and two, that it's necessary to a

9   reorganization.

10        And the cases are clear under that prong that it's

11  not just the debtor coming in and saying I've got this great

12  idea.  I've got a wing and a prayer and maybe I'll make this

13  happen.  But it's actually showing a reasonable prospect of a

14  reorganization.

15        And in the context of that hearing I'm also going

16  to want testimony on who the creditors really are in this

17  case to the extent that there have been allegations that the

18  creditors are insiders and other, or affiliates of the

19  debtor, that's something that I'm going to need to hear more

20  about.  So I think between now and then you folks are

21  probably going to want to do some discovery.  Whether and how

22  the Urban Outfitters chapter of this plays into it, you know,

23  I'll leave to you.

24        MS. DALEY:  I was going to make a suggestion, Your

25  Honor.



```
 1              THE COURT:  Yes?
 2              MS. DALEY:  The case that is in state court, the
 3   case that was started by the debtor against my client is
 4   their claim for tortious interference, which is their claim
 5   to fame here.  And our -- and my client through other counsel
 6   made an application to the court in order to dismiss the
 7   case.
 8              THE COURT:  Okay that, since they're the
 9   plaintiff, that action is not stayed by our being here,
10   correct?
11              MS. DALEY:  I don't see how the stay would apply,
12   although the state court stayed it because of this, based
13   upon correspondence, from what I understand was sent by
14   counsel for debtor to the state court judge.  What I would
15   suggest that we let that case in state court, let the judge
16   make their determination in state court.
17              THE COURT:  I don't -- the stay's not --
18              MS. DALEY:  Because if the --
19              THE COURT:  -- they're the plaintiff.  If they
20   want to pursue that, the stay's not.
21              MS. DALEY:  No, but I'm just saying because we --
22   are we then stayed --
23              MR. LEINWAND:  The state --
24              MS. DALEY:  -- on this motion to dismiss in state
25   court?  We made the motion to dismiss that case.  We
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

 1  submitted documents.  We submitted proof.  It was a pre-
 2  answer motion.
 3          THE COURT:  I understand what you're saying.
 4  Right.
 5          MS. DALEY:  So if the state court finds that their
 6  tortious interference claim has no merit, the state court, if
 7  we submit to the Court --
 8          THE COURT:  Well look, it's -- you're right.  It
 9  is -- you're taking additional action in that action is
10  stayed, unless you're going to consent --
11          MR. LEINWAND:  We're going to do something with
12  respect to that prior to November.  And we're -- we will do
13  that expeditiously.
14          MS. DALEY:  What are we going to do?
15          THE COURT:  Right, well --
16          MS. DALEY:  The judge isn't going to render a
17  decision because the debtor contacted the court --
18          THE COURT:  Right.  Well look, I mean you've got
19  to -- you're at a crossroads here.
20          MR. LEINWAND:  We are at a crossroads and I think
21  that the time frame is short.  I heard Your Honor clearly
22  that, you know, on a --
23          THE COURT:  I think you did.
24          MR. LEINWAND: -- number of issues.  And I think
25  that by November 2nd we will, as Yogi said, we will come to a



1   fork in the road and we will take it.

2             MS. DALEY:  There's one other problem that came to

3   my attention.

4             THE COURT:  Yeah.

5             MS. DALEY:  I think this was post submitting the

6   motion, is that it appears that the debtor is trying to turn

7   the place into a flea market and rent out booths in the

8   building.  Now the problem we have is we go back to the lease

9   agreement --

10            THE COURT:  Well if you've got consent -- if you

11  got consent rights to sublets, then you have consent rights

12  to sublets, right?

13            MS. DALEY:  But we haven't consented to anything.

14  So I would respectfully urge the Court to direct the debtor

15  at this point --

16            THE COURT:  Well, they -- it's part of the --

17            MS. DALEY:  -- to take no actions.

18            MR. LEINWAND:  We have obligations under the lease

19  and -- and we (indiscernible) --

20            THE COURT:  And --

21            MS. DALEY:  But the --

22            MR. LEINWAND:  We're not operating a flea market

23  and we -- we don't --

24            THE COURT:  Look, he -- you're representing to me

25  on the record -- I'm about to tell you what you're



1   representing to me on the record.  You're representing to me

2   on the record that you are fully complying with the lease in

3   all respects.  That's what you -- that's what you have to be

4   doing.  That's what you have to be doing.

5         MR. LEINWAND:  We understand our obligations under

6   363 -- 365.

7         THE COURT:  Three sixty-five (365).

8         MR. LEINWAND:  We understand our obligations.

9         THE COURT:  Okay.

10        MR. LEINWAND:  And, you know, I don't want to say

11  I'm -- there's so many technical violations, I can't tell you

12  that I'm --

13        THE COURT:  I understand.

14        MR. LEINWAND:  -- complying with every technical -

15  -

16        THE COURT:  I'm not trying to --

17        MR. LEINWAND:  But yes, we -- to the best of my

18  knowledge, we will be complying with each and every provision

19  of the lease.

20        THE COURT:  All right.  All right, so in the

21  meantime --

22        MS. DALEY:  I'm sorry, Judge.

23        THE COURT:  Let me say something to both of you.

24  To the extent that counsel has raised infirmities in service,

25  all right, would you please correct those to the extent that

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1   you -- that he is correct, so that I have a good record on
 2   service in time for the next hearing.
 3              MS. DALEY:  If there is an infirmity, I believe it
 4   may only be with respect to the dismissal portion.  Not with
 5   regard to the lift stay portion.
 6              THE COURT:  Okay.
 7              MS. DALEY:  So whatever there is, we will deal
 8   with it --
 9              THE COURT:  All right.
10              MS. DALEY:  -- prior to the next court date.
11              THE COURT:  Okay.  Excellent.  Now what about are
12   you folks going to be able to agree on any discovery that you
13   need between now and November 2nd?
14              MS. DALEY:  We received a subpoena last week which
15   we were going to review and make an application to the court
16   for appropriate relief on it.  We believe that this subpoena
17   is seeking information that he --
18              THE COURT:  Why would you serve a -- okay, keep
19   going.
20              MS. DALEY:  It's either seeking information that
21   they already had or information that has absolutely no basis
22   under the terms of the lease agreement.  Because if my
23   client, which my client has had insurance on this building as
24   the owner of the building, that insurance is totally
25   different from the tenant's having insurance under the terms
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010 ...
www.esquiresolutions.com

An AlexanderGallo Company

 1 | of the lease.

 2 |         THE COURT:  So he, the tenants are obligated to

 3 | have renters insurance?

 4 |         MS. DALEY:  The tenant is obligated to have

 5 | insurance in accordance with the provision that was contained

 6 | in the lease agreement, which they haven't had.  They

 7 | submitted policies -- and this was litigated even like the

 8 | year before at the beginning of -- I think it was 2009 -- at

 9 | the beginning of 2009, because they had gotten a Lloyds of

10 | London policy.

11 |         Now everybody hears Lloyds of London and says, oh

12 | gee, that's great.  It's only one problem; they're not

13 | recognized or authorized in the state of New York.  So if

14 | there's a claim then they can disclaim.

15 |         Now this building has a marquee, or a canopy.

16 | We've had problems because of the debtor's failure to

17 | maintain the marquee where it's at a bus stop and people --

18 | and he's got these lolly (phonetic) columns --

19 |         THE COURT:  What's a lolly column?

20 |         MS. DALEY:  It's a temporary support.

21 |         THE COURT:  Okay.

22 |         MS. DALEY:  But he's had these temporary supports

23 | now for I would say at least two, maybe three years, and has

24 | done nothing.  The only thing this debtor did in that

25 | building was a demolition.  A demolition that the debtor at



1    the 341 meeting claimed to have spent a million dollars on,

2    which we believe there may be a problem with that statement

3    and we will submit what we find to the Court at a later date.

4              THE COURT:  If you -- if you ultimately were

5    successful in prevailing on the position that the lease was

6    terminated and it comes back to you, would there be a damage

7    claim under the lease because the premises is not going to be

8    turned back over to you in the cond- -- it --

9              MS. DALEY:  A waste claim?

10             THE COURT:  Something like that.

11             MS. DALEY:  The landlord, the owner, would have

12   claims against the debtor tenant, although the debtor tenant

13   has nothing.  I don't see where any claims would ever --

14             THE COURT:  I mean the lease provides that the

15   premises be returned --

16             MS. DALEY:  Sure.  They have to --

17             THE COURT:  -- be turned back to you in a certain

18   condition --

19             MS. DALEY:  -- of course.  Correct.

20             THE COURT:  -- broom clean, etcetera?

21             MS. DALEY:  There's also a guarantee.  There's a

22   personal guarantee that Mr. Soto signed as well.  So, I mean,

23   are there going to be future claims with regard to the waste

24   that the debtor has permitted this building to fall into?

25   There may be.  At this point, our primary concern is getting

1  the building back.

2           THE COURT:  All right.

3           MS. DALEY:  And, you know, we talk about the

4  value, well, it's a shell of a building at this point based

5  on what they've done to the interior of it and their failure

6  to maintain the exterior and the interior.  And what value --

7           THE COURT:  When they took it over, it was

8  outfitted as a theater?  In other words --

9           MS. DALEY:  There was still, from what I

10 understand, Your Honor, --

11          THE COURT:  Uh-huh, (affirmative).

12          MS. DALEY:  -- there was still --

13          THE COURT:  Seats and what not in it?

14          MS. DALEY:  -- seating.  Correct.

15          THE COURT:  Uh-huh, (affirmative).  Okay.

16          MR. LEINWAND:  Just briefly, Your Honor, because I

17 don't want to argue this now.

18          THE COURT:  None of this is evidence.

19          MR. LEINWAND:  Okay.

20          THE COURT:  Okay, this is just my trying to get a

21 sense of what this is about.

22          MR. LEINWAND:  The demolition plans were the --

23 the landlord's [sic] demolition plans were approved.  They

24 knew they were going to demolish, that was the whole plan.

25          MS. DALEY:  I'm not arguing against that.



```
 1              MR. LEINWAND:  Okay.

 2              THE COURT:  Okay.

 3              MR. LEINWAND:  And the insurance is -- is very

 4  important because it was the gravamen of the --

 5              THE COURT:  Of the Yellowstone.

 6              MR. LEINWAND:  -- judgment of possession.  And it

 7  is the debtor's position that the landlord had insurance on

 8  the premises that would have satisfied --

 9              THE COURT:  Well one thing is clear that I also

10  can't do, is if there -- if a state court judge has issued a

11  ruling on that, I don't get to second guess that.

12              MR. LEINWAND:  There's no -- no (indiscernible)

13  here.  We're not doing that.  We're -- you know, the appeals

14  are staying where they are.  When there hasn't been a

15  determination, that, Your Honor can hear.  We understand

16  that.

17              MS. DALEY:  But they have done nothing to perfect

18  --

19              THE COURT:  Well that's going to be a fact that

20  you can put on the record at the subsequent hearing.  That

21  goes to their good faith.  Because if there are various

22  appeals and they've done nothing to prosecute them, you know,

23  they don't get to just run out the string in state court

24  forever, but in the meantime come here.  So let's go back to

25  --
```



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1              MR. LEINWAND:  Okay, and so --
 2              THE COURT:  -- the issue of discovery.  So if you
 3   -- if the discovery has been -- is improper, you under my
 4   case management orders and the way I know you both know how
 5   to practice law, you need to confer with each other and try
 6   to resolve the discovery disputes.  Cooperate with each other
 7   with respect to documents, depositions, whatever it is.  If
 8   you can't, call me and we can come here and resolve it.  But
 9   I certainly would hope and expect that you could get to an
10   agreement with respect to the exchange of documents and any
11   depositions that you need.
12              I don't know if there has to be any additional
13   briefing that you want to submit, but I would ask you to come
14   up with a schedule for any additional briefing that you want
15   to submit to me before a trial date.  And let's look at the
16   calendar.
17              MR. LEINWAND:  Do I understand from what Miss
18   Daley said that there's no problem with respect of our
19   proceeding with the appeals, even though the appeals are
20   essentially appeals from orders of the District Court in
21   which the debtor was the defendant, which may require
22   modification of the stay.  With consent -- if I have consent
23   of the landlord, we will proceed with those appeals.
24   Otherwise, we will have to bring a motion to allow us to
25   proceed with the appeals.
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An Alexander Gallo Company

1    MS. DALEY:  Your Honor, the problem that the

2  debtor has here, let's take the civil court judgment of

3  possession, with the order that they were supposed to pay use

4  and occupancy.  The debtor, I believe filed a notice of

5  appeal.  The debtor, I do not believe is going to move to

6  perfect the appeal for one simple reason, if they do that and

7  they try to apply to the appellate term for a stay, the

8  appellate term will more than probably only grant them a stay

9  so that they can remain in the building if they pay --

10    THE COURT:  If they pay, right.

11    MS. DALEY:  -- you know.  As well as posting a

12  bond to cover whatever arrears they owe from before.  So

13  counsel I don't believe has a --

14    THE COURT:  So then, let's take a -- so then we

15  should take him up on his offer.  I mean first of all, I

16  don't -- to go back to the applicability of my stay, right,

17  why does my stay preclude you from perfecting that appeal?

18    MR. LEINWAND:  Because we were a defendant in the

19  action underneath in a stay of (indiscernible).

20    THE COURT:  All right, but she's not doing

21  anything.

22    MR. LEINWAND:  I have --

23    THE COURT:  The stay only precludes somebody

24  taking an action right to interfere with property of the

25  estate.

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1              THE DEBTOR:  No.
 2              MR. LEINWAND:  I agree with you.  However, I don't
 3  think that's what the law is.  I think that's what it should
 4  be.  But --
 5              THE COURT:  All right, but do you -- okay --
 6              MR. LEINWAND:  But if she consents to it, I have
 7  no problem --
 8              THE COURT:  Are you consenting to him?
 9              MS. DALEY:  If he's going to make an appli- --
10  he's going to perfect his appeal in state court?
11              THE COURT:  He's asking right now --
12              MS. DALEY:  Let him go perfect his appeal.
13              THE COURT:  -- that he wants confirmation that his
14  taking action to perfect the appeal is not a violation of the
15  automatic stay.
16              MS. DALEY:  I do not believe that it's a violation
17  of the automatic stay.
18              THE COURT:  All right.  So --
19              MR. LEINWAND:  Fine then, thank you, Your Honor.
20              THE COURT:  All right.  So to the ext- --
21              MS. DALEY:  As I don't believe it's a violation of
22  the automatic stay, although we don't want to risk, and
23  that's what we're here --
24              THE COURT:  Understood.  That's --
25              MS. DALEY:  -- on the other stay --
```



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1              THE COURT:  -- but that's different.

 2              MS. DALEY:  -- on the court with --

 3              THE COURT:  Right, but that's different.  That's

 4  as to an action that you would be taking, right?

 5              MS. DALEY:  Our motion to dismiss?

 6              THE COURT:  Yes.  You would be pros- -- taking

 7  action in the nature of prosecuting your motion to dismiss.

 8              MS. DALEY:  Although, Your Honor, the state court

 9  is equipped to interpret the state law on that topic.

10              THE COURT:  Right.

11              MS. DALEY:  So there should be -- the state court

12  really should, they're either going to deny the application

13  and direct us to file --

14              THE COURT:  Right.

15              MS. DALEY:  -- an answer.

16              THE COURT:  Right, but that's in the nature of

17  you're asking me to issue a -- lift the automatic stay so

18  that that can proceed. But with respect to the appeal, I do

19  not believe that the automatic stay precludes the debtor from

20  taking steps to perfect that appeal in the state court.  And

21  to the extent that it does, you've now consented to --

22              MS. DALEY:  He's got three appeals.

23              THE DEBTOR:  (Indiscernible).

24              THE COURT:  I don't think -- I think you can move

25  forward and perfect those appeals.
```



 1          MR. LEINWAND:  Thank you, Your Honor.

 2          THE COURT:  All right.  So I need to give you a

 3  date.  I think that's --

 4          MR. LEINWAND:  Yeah, we need --

 5          THE COURT:  I'm sorry.  I don't mean to cut you

 6  off.

 7          MR. LEINWAND:  Yeah.  No, I -- we could do that if

 8  Your Honor gives us dates and we could back into it with some

 9  sort of scheduling order.  I think that's what would make

10  sense, if Miss Daley's okay with that with respect to, you

11  know, the briefing and discovery.  She's looking at her

12  Blackberry.

13          THE COURT:  Look, just so we're clear on the stay

14  issue with respect to the appeals, why don't you prepare a

15  stipulation and send it to Miss Daley for signature and I'll

16  so order it.  So that you have a piece of paper to show the

17  various and sundry state court clerks, judges, whatever.  So

18  that there's a clear indication that it's not a violation of

19  the automatic stay.

20          MR. LEINWAND:  Right we would --

21          MS. DALEY:  How about stipulating so that -- how

22  about stipulating that Judge Yates (phonetic) in the state

23  court can determine the issue on the tortious interference?

24          MR. LEINWAND:  We're not going to do that, Your

25  Honor.  We're going to do something with respect to that


ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   tomorrow.

2              THE COURT:  All right.  Well why don't you talk to

3   --

4              MR. LEINWAND:  I will talk with --

5              THE COURT:  -- you know, you'll talk --

6              MR. LEINWAND:  -- I will talk with counsel about

7   it.

8              THE COURT:  -- talk to counsel about that.  In

9   terms of coming back here for an evidentiary hearing, how

10  about November 9th?

11             MS. DALEY:  I was just on that day, Judge.

12             THE COURT:  November 9th, 10:00 o'clock or --

13             FEMALE SPEAKER:  Are we open on that day --

14             THE COURT:  November 9th at 10:00 o'clock?

15             MR. LEINWAND:  Fine, Your Honor.

16             MS. DALEY:  Yes, Your Honor.

17             THE COURT:  Okay.

18             MS. DALEY:  And that's for the hearing?

19             THE COURT:  For the hearing.  Unless, you know, I

20  mean if, you know, if a miracle occurs and you're able to

21  work something out before then, I'd be delighted to use that

22  date to approve, you know, some kind of a global settlement.

23             But in the absence of that, and just so we're

24  clear, the two months needs to be paid on or before November

25  2nd and we're also reserving to November 9th the issue of to



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   what extent the prorate has to be paid under 365(d)(3).  All

2   right, if you need my help in further scheduling or discovery

3   matters, please contact my chambers.

4            MR. LEINWAND:  Thank you.

5            THE COURT:  All right.  All right, thank you

6   folks.  We're adjourned.

7            MS. DALEY:  Thank you, Your Honor.

8                 (Time noted:  12:03 p.m..)

9                      *  *  *  *  *

10                      CERTIFICATE

11       I, RANDEL RAISON, certify that the foregoing is a

12   correct transcript from the official electronic sound

13   recording of the proceedings in the above-entitled matter, to

14   the best of my ability.

15



16   _____          October 29, 2010

17   Randel Raison

18

19

20

21

22

23

24

25

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company