1

```
 1                  UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
 2
    IN RE:                     .   Case No. 10-14731-scc
 3                             .   Chapter 11
    2626 BROADWAY, LLC,        .
 4                             .   One Bowling Green
                  Debtor.      .   New York, New York  10004
 5                             .
    . . . . . . . . . . . . . . .   Tuesday, November 9, 2010
 6                                 10:33 a.m.

 7   TRANSCRIPT OF INITIAL CASE CONFERENCE and MOTION OF BROADWAY
     METRO ASSOCIATES, L.P. FOR AN ORDER (A) GRANTING RELIEF FROM
 8  THE AUTOMATIC STAY OR IN THE ALTERNATIVE (B) DISMISSING THIS
       CHAPTER 11 CASE BEFORE THE HONORABLE SHELLEY C. CHAPMAN
 9                 UNITED STATES BANKRUPTCY JUDGE

10  APPEARANCES:

11  For Broadway Metro           M. Teresa Daley Law Offices, PC
    Associates, L.P.             By M. Teresa Daley, Esq.
12                               By Andrea J. Lawrence, Esq.
                                 520 8th Avenue, 24th Floor
13                               New York, New York  10018
                                 (212) 560-3943
14
    For the Debtor, 2626         Robinson Brog Leinwand Green
15  Broadway, LLC                  Genovese & Gluck, P.C.
                                 By Robert R. Leinwand, Esq.
16                               By Robert M. Sasloff, Esq.
                                 875 Third Avenue
17                               New York, New York  10022
                                 (212) 586-4050
18
    For the Chapter 7 Trustee:   U.S. Department of Justice
19                               Office of the U.S. Trustee
                                 By:  Nazar Khodorovsky, Esq.
20                               33 Whitehall Street, 21st Floor
                                 New York, New York  10004
21                               (212) 510-0500

22  Audio Operator:              Slinger

23  Transcription Service:       Esquire
                                 One Penn Plaza, Suite 4715
24                               New York, New York  10119
                                 (212) 687-8010
25
    Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
```



```
 1                    (Time Noted:  10:33 a.m.)

 2               THE COURT:  All right, shall we have appearances?

 3               MS. DALEY:  Yes, Your Honor.  M. Teresa Daley from

 4   M. Teresa Daley Law Offices, P.C., for the Movant, Broadway

 5   Metro.

 6               MS. LAWRENCE:  Andrea Lawrence from M. Teresa

 7   Daley Law Offices, for the Movant, Broadway Metro.

 8               MR. LEINWAND:  Good morning, Your Honor.  Robert

 9   Leinwand and Robert Sasloff from Robinson Brog, counsel for

10   the Debtor, 2626 Broadway, LLC.

11               MR. KHODOROVSKY:  Good morning, Your Honor, Nazar

12   Khodorovsky for the U.S. Trustee.  Thank you, Your Honor.

13               THE COURT:  All right.  Okay, tell me what we're

14   doing today.

15               MS. DALEY:  Well, first of all, I think we might

16   have a little bit of housekeeping.  The last time we were

17   here, Your Honor, there was an issue that was raised with

18   regard to service of the motion.

19               After we left Court that day, we did, in fact,

20   send out copies to, I believe, everyone that was on the

21   creditors' list, and the affidavits of service with regard to

22   that were electronically filed.

23               THE COURT:  Okay.

24               MS. DALEY:  So, I think that that issue may have

25   been disposed of.
```



1            THE COURT:  Okay.

2            MS. DALEY:  Secondly, Your Honor, the Debtor was

3    required to, on November 2, 2010, to have paid post-Petition

4    use and occupancy and the Debtor --

5            THE COURT:  Did not happen.

6            MS. DALEY:  Did not happen, Judge.

7            THE COURT:  All right, so before we start

8    galloping off, my question for the Debtor is what are we

9    doing?  The rent wasn't paid.  Why are we here today with all

10   these people having a hearing?

11           MR. LEINWAND:  I don't really understand why we're

12   here today, Your Honor.  The last hearing, Your Honor made

13   clear that the price of admission with respect of the

14   Debtor's continued entry into this Court as well as their

15   remaining in the premises was the payment of the use and

16   occupation post-Petition.

17           THE COURT:  Right.

18           MR. LEINWAND:  And Your Honor was very gracious in

19   indicating that she wasn't going to turn this other into an

20   issue and was going to in fact allow the Debtor to pay in or

21   about November --

22           THE COURT:  November 2nd.

23           MR. LEINWAND:  The Debtor did not have the funds

24   to pay that and did not pay that money.

25           THE COURT:  Right.



1          MR. LEINWAND:  Your Honor, there was a letter to

2   the Court by Ms. Daley's firm dated November 8th indicating

3   that since the money was not paid that they believe they were

4   entitled to relief from the automatic stay.  We agree with

5   that belief.  We believe that the motion seeks relief from

6   the automatic stay or in the alternative dismissal of the

7   case.  The Debtor is prepared to consent to a vacator of the

8   automatic stay to permit the landlord to take whatever action

9   the landlord chooses.

10          With that being said, I would have thought that it

11   would not be necessary to have an evidentiary hearing before

12   Your Honor.

13          THE COURT:  Okay, well maybe this is my fault.  Is

14   this my fault?

15          MS. DALEY:  No, Judge, it's not.

16          THE COURT:  Okay, I'm just -- I'm a little

17   astonished so --

18          MS. DALEY:  The other portion of the application

19   was to dismiss this case --

20          THE COURT:  Right.

21          MS. DALEY:  -- based upon our position that it was

22   a bad faith action.

23          THE COURT:  But why do we need to go there if he's

24   willing to lift the stay?

25          MS. DALEY:  Because I think it's very gracious of



1   him, however, if we lift the stay, I go back to State Court,

2   a warrant gets issued, they go in on an order to show cause

3   and they continue to drag this thing out *ad infinitum*.  I had

4   suggested to counsel --

5           THE COURT:  Wait, I'm not following you.  My

6   concept of lifting the stay is that he's completely out of

7   the premises.

8           MS. DALEY:  He won't give over the keys.  I asked

9   for the keys.

10          THE COURT:  Are you serious?

11          MR. LEINWAND:  Your Honor, my client's position is

12  simply that and I believe that the modification of the stay

13  is simply that the Debtor can -- I'm sorry, the landlord can

14  proceed with the summary proceedings that the landlord

15  requires and that was -- much of that was done pre-Petition

16  and simply accomplished the eviction of the Debtor as

17  expeditiously as possible.

18          THE COURT:  It's not going to happen.  It's not

19  going to happen that way.  Either you're going to lift it --

20  you agree to lift the stay and by that I mean totally the

21  stay is lifted, the stay is gone, turn over the keys, it's

22  over, or we'll go to trial on the bad faith filing.  I'm not

23  going to countenance that.  If that's what your client

24  thought was going to happen, that's not going to happen.

25          MR. LEINWAND:  I hear you, Your Honor.  Could I



1   have one or two minutes just to speak to my client?

2         THE COURT:  Absolutely.

3         MR. LEINWAND:  Thank you, Your Honor.

4      (Brief recess from 10:47 to 11:21 a.m.)

5         THE COURT:  Okay, where are we, folks?

6         MR. LEINWAND:  Thank you for your time, Your

7   Honor.  We attempted to do discussions, apparently

8   unfortunately, what I perceive as due to a long history

9   between the parties and lack of trust, et cetera, et cetera,

10  et cetera, we were unable to arrive at any resolution.

11        I have spoken to the client with respect to what

12  Your Honor indicated.  The client's position is that what was

13  sought was a modification of the automatic stay.  He would

14  consent to a modification of the automatic stay to permit the

15  landlord to take whatever actions the landlord deemed

16  necessary in State Court to regain possession of the

17  premises.

18        It's my understanding that right up until the end

19  of that process with the modification of the stay, they can

20  take whatever action, but my client is not willing at this

21  point in time to give up any of his State Court rights with

22  respect of relinquishing whatever possession he has of the

23  premises.

24        THE COURT:  And he thinks that he's entitled to

25  the stay?  He's not here anymore?



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1          MR. LEINWAND:  He's just in the bathroom.

2          THE COURT:  Okay, and he believes he's entitled to

3    remain in possession of the premises and not pay rent?

4          MR. LEINWAND:  No.  No, he believes that he's

5    entitled to whatever State Court remedies he would be

6    entitled to at that point in time.  He believes that -- you

7    know, again, I explained to him the requirements and mandates

8    of the Bankruptcy Code.  He understands the requirements and

9    mandates of the Bankruptcy Code, was not able to comply with

10   those and, accordingly, because of that, has authorized us to

11   consent to the modification of the stay.

12          What he doesn't understand is how this Court has

13   the authority to take away his State Court rights when, in

14   fact, all that was requested by the landlord was a

15   modification of the stay with authority to return to the

16   State Court to --

17          THE COURT:  Well, let's talk about that because if

18   he's questioning my authority, then I have a lot of questions

19   for him as well.

20          This Court is not a place where you come to engage

21   in a game of "gotcha."  Can I be any more clear than that?

22          MR. LEINWAND:  No, Your Honor, you've been clear

23   throughout.  I believe that the client's position is simply

24   that the case is, in fact, a case where you have a tenant and

25   a landlord, but it goes further than that.



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
w w w . e s q u i r e s o l u t i o n s . c o m

An AlexanderGallo Company

1          THE COURT:  But you have a tenant and a landlord

2    who have a history of a dispute.  Your client believes, or at

3    least it says it believes, that the landlord wrongfully

4    interfered with the Urban Outfitters deal.

5          MR. LEINWAND:  That's correct.

6          THE COURT:  That's his position, okay?  That's a

7    State Court issue as well.

8          MR. LEINWAND:  That's correct.

9          THE COURT:  Okay, in the absence of any showing --

10   and if we're going to have to go through this, we'll go

11   through it -- in the absence of any showing that there are

12   real creditors here, that there's probability of

13   reorganization, that there are any other assets here, I'm not

14   -- this case is going to be dismissed.

15          And unfortunately, Ms. Daley, you're going to have

16   to go continue to chase him.  But your client is not going to

17   use my Court as an instrument or as part of a plan to

18   continue to fight with his landlord.  It's just not going to

19   happen.

20          MR. LEINWAND:  We believe, Your Honor, that the

21   case was, in fact, filed with the intention to reorganize.

22   It was filed in good faith.  We do not believe the case

23   should be dismissed.  I understand Your Honor's position.

24          THE COURT:  What's the answer to the question of

25   why the Debtor can remain in Chapter 11 without paying rent



1  and remain in the premises?

2          MR. LEINWAND:  It cannot --

3          THE COURT:  Educate me.  I'm giving you a hard

4  time.

5          MR. LEINWAND:  No, Your Honor, and you should.  I

6  understand.  I don't want to educate you.  I can proffer to

7  you my position, my understanding of the Bankruptcy Code.

8          My understanding of the Bankruptcy Code is simply

9  that an obligation under 363 to pay the rent and additional

10  rent pursuant to the lease is an absolute obligation.  The

11  failure to do that would, in fact, result in a deemed

12  rejection of the lease pursuant to 365.

13          The deemed rejection of the lease would require

14  the landlord [sic] to vacate possession of the premises.  If

15  the landlord [sic] does not vacate possession of the

16  premises, then -- I'm sorry, the tenant does not vacate

17  possession of the premises, then the landlord has the right

18  to proceed in State Court and exercise all of its State

19  Courts.

20          I do not know, when you have a rejection, it is

21  not a termination; it is simply putting back the fact that

22  the Debtor no longer has the obligation to pay the rent

23  reserved under the lease and the lease is deemed rejected.

24  The tenant has no rights with respect to that lease, cannot

25  assign that lease, but still retains possession until that

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1 | possession is removed by the appropriate State Court

2 | remedies.

3 |      And that's my understanding and it is not at all

4 | an attack upon Your Honor's competence or jurisdiction.  It

5 | is simply what we believe is what Congress enacted in the

6 | Bankruptcy Code.

7 |      And that, when the landlord requested in its

8 | motion for a modification of the automatic stay, that is what

9 | it requested and we are consenting to that modification, and

10 | that modification gives the landlord all of its rights

11 | without any stay provisions of 362 or otherwise of the

12 | Bankruptcy Code to proceed and exercise all of its rights in

13 | the State Court.  And Your Honor --

14 |      THE COURT:  All right, are we going to go to trial

15 | now on the issue of bad faith filing?  Is that what we're

16 | going to do next?

17 |      MR. LEINWAND:  We believe, Your Honor, that when a

18 | landlord makes a motion in the alternative for relief from

19 | the stay, or alternatively dismissal, and is granted the

20 | relief that it has requested in the motion, it would not be

21 | necessary to go beyond that for a dismissal.

22 |      If, however, this Court deems it appropriate under

23 | the circumstances to hear the application in the alternative

24 | for a dismissal, we are prepared to do that.  We think that

25 | the only issue that is raised is whether or not this step --



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An Alexander Gallo Company

1          THE COURT:  How can the landlord pursue State

2    Court remedies if the tenant remains -- if the Debtor remains

3    in Chapter 11?

4          MR. LEINWAND:  How can it pursue State Court

5    remedies?  The State Court remedies that the landlord wishes

6    to proceed in is simply to regain possession of the premises

7    so that it can proceed to do whatever it wants with the

8    premises unfettered by the Debtor.

9          If Your Honor were to grant a modification of the

10   automatic stay with respect to the property and with respect

11   of the landlord's continued quest to retain possession, then

12   the landlord can do that unfettered by the Debtor's existence

13   in Chapter 11.

14         What we will proffer, if Your Honor wishes to have

15   a hearing on the dismissal, is simply that we believe that

16   this case should not be dismissed, that the Debtor has assets

17   to proceed, that the Debtor had the intent to reorganize and

18   that the Debtor has a possibility in prospect of a successful

19   reorganization.

20         And we believe that if there were a cutting away

21   all the pre-Petition acts and cutting away all of the

22   arguments that will be proffered by Ms. Daley and her firm,

23   we believe that this case should continue in a Chapter 11,

24   even were the Debtor not in possession of the premises.

25         And we also believe that the fact that the Debtor



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An Alexander Gallo Company

1   is in bankruptcy does not, in any way, impair the landlord's

2   right to regain possession of the premises, which is what the

3   landlord wished to do in this case.

4          THE COURT:  All right, let me hear from Ms. Daley.

5          MS. DALEY:  First of all, Your Honor, with respect

6   to the motion to vacate the stay, while counsel may be

7   correct that once the stay is vacated we can go back to State

8   Court, that does not preclude this Court from under -- within

9   its power, jurisdiction, and authority to direct the Debtor

10  here to turn keys over.  This Court does have that power and

11  regardless of whether or not it does vacate the stay.

12         Why?  Because it has violated an order of this

13  Court directing it to make payment by November 2nd which it

14  failed to do and also there have been no operating statements

15  submitted.  The schedules that have been submitted have

16  creditors listed with amounts that are overstated/

17         THE COURT:  Why doesn't that just go to my ability

18  to dismiss the case?

19         MS. DALEY:  Well, it goes to your ability to

20  dismiss the case, but you can also take into consideration

21  when you're looking to grant other relief to Movant which the

22  Movant has requested that this Court do.

23         This Court can direct the U.S. Marshal to deliver

24  possession in conjunction with the Civil Court judgment that

25  was entered granting possession to the landlord.  We don't

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   have to go back to State Court if this Court chooses to

2   direct the U.S. Marshal to enforce that judgment, which this

3   Court can do.

4          This Court can also fashion relief in whatever

5   fashion it deems necessary in order to make certain that all

6   of the rights of the parties are adequately protected.  And,

7   in this particular case, Your Honor, we have a situation not

8   only with the building -- we didn't start a State Court civil

9   proceeding for the recovery of rent.  We started the

10  proceeding as a holdover based upon the termination of the

11  lease agreement.

12          THE COURT:  What was the dismissal on that?  For

13  lack of personal jurisdiction?  I think that was what was

14  alleged in the papers.  What happened to the holdover

15  proceeding?

16          MS. DALEY:  There was two holdovers.  See, back in

17  2008, the Debtor had entered into a contract to purchase the

18  building under certain provisions contained in the lease

19  agreement.  The Debtor failed to close on that contract.  In

20  the interim period, the Debtor also failed to pay rent.  Then

21  the Debtor also defaulted because they didn't do certain

22  things; they permitted certain violations to be placed upon

23  the building by the Department of Buildings and the

24  Environmental Protection Agency, and they didn't cure that.

25          They didn't -- he didn't maintain -- I'm sorry,

1  not he, the Debtor did not maintain the appropriate insurance

2  as required pursuant to the lease.  There was a laundry list

3  of items under which they have defaulted.

4       The landlord back in the early part of 2009 had

5  served notices to cure.  They went in, they tried to get

6  those *Yellowstones*.  The court denied the *Yellowstones*.

7  There was a termination notice that was served.

8       And then, lo and behold, there was a Civil Court

9  holdover proceeding in the spring of 2009 --

10       THE COURT:  Right, that's the one --

11       MS. DALEY:  -- which is different than the one

12  that I have.  It's the one that -- the second one that we

13  have is in 2010.

14       What the Debtor then did in the civil court was

15  the Debtor went in and challenged service of the notice of

16  petition and petition in that civil summary holdover

17  proceeding and what happened was is that the court found that

18  the building apparently was vacant, so under the real

19  property action and proceeding law in the State Court, the

20  court found that the court did not have jurisdiction because

21  service of the notice of petition and petition had not been

22  properly made.

23       After that, or in the interim, there had been some

24  non-payment cases made, there was drawdown on security

25  deposit.  I got involved in this case, I believe, it was in

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   June of 2009 when we went before Judge Branson because the

2   Debtor was not providing access to the premises, wasn't doing

3   what they were supposed to be doing under the terms of the

4   lease agreement, as well as there were certain submissions to

5   the Department of Building which contained signatures which

6   were not that of my client's principal. So, there were issues

7   of forged documents having been submitted to the Department

8   of Buildings.

9        At or around the same time, beginning in the early

10  part of 2009 through the summer months, Debtor had apparently

11  been negotiating with Urban Outfitters.  The Debtor entered

12  into a sublease, executed a sublease agreement with Urban

13  Outfitters contrary to the terms of the master lease which

14  required them to have obtained the landlord's prior written

15  consent which they did not do.

16       During the course of the litigation from -- and

17  I'm trying to remember exactly which one it was, but it was

18  in the spring of 2009 -- they finally came up with this

19  sublease.  Now, this is a landmarked building --

20       THE COURT:  Right.

21       MS. DALEY:  So, there are lot of things that need

22  to be done before anything else gets done.

23       THE COURT:  Right.

24       MS. DALEY:  When my client found out about it, my

25  client through counsel submitted a letter, I believe it was



1   to the Debtor and Debtor's attorney with a copy to Urban

2   Outfitters, advising them we never consented to the sublease.

3   From what we understand, that was the first time that Urban

4   Outfitters discovered that the landlord was not on board.

5   And the reason the landlord was not on board was because,

6   under the terms of that proposed sublease, the lease, the

7   master lease, needed to be changed, otherwise Urban

8   Outfitters wouldn't go through with the deal.

9           Under the terms of the Urban Outfitters sublease,

10  the Debtor also had to come up with a slew of money and had

11  to do certain work in the premises, which the Debtor also

12  didn't do.

13          THE COURT:  Right, let's --

14          MS. DALEY:  And it goes on --  I mean, it goes on

15  and on.  Now, I have a judgment from Judge Owing.  I have

16  orders from Judge Branson.  I have certified copies with me

17  today.  And, they were not supposed to stay in possession of

18  the premises.  We have judgments for possession.

19          Judge Branson denied their *Yellowstone*.  They

20  raised these -- you know, all sorts of arguments that they

21  tried to raise here in State Court.

22          THE COURT:  The Debtor commences Chapter 11

23  proceeding.  It's through this party to which you have now

24  all been invited, and the landlord's made a motion, it's

25  moved in the alternative --



1        MS. DALEY:  And for -- there's a provision at the

2  end of my application, Your Honor, also for such other and

3  further relief as the Court --

4        THE COURT:  That's exactly where I'm going and I

5  hear your client's position with respect to my ability to

6  dispense with State Court process, but there are serious

7  allegations here and I'm not so sure that your client's right

8  that I don't have the ability to order the keys to be turned

9  over and for this to be put to a stop.

10        And I think, Ms. Daley, I think you have to put on

11  your case.  If the Debtor wants to try to convince me that

12  this was a filing made in good faith with an honest intent to

13  reorganize and a possibility of reorganizing, then I want to

14  hear all about who the creditors are, what the other assets

15  are, what the prospects are.  Let's hear it.

16        It's not just, and I've said this in many cases,

17  it's not "I have a guy, I know a guy, there might be a deal."

18  That's not good enough and if there are no other assets and

19  given that there's been an agreement to vacate the stay, you

20  know, I don't know if that is a concession that there's no

21  legal right anymore.  I suspect that it's not.  But there's a

22  history here and I'm not so sure that I can't fashion an

23  order that would direct the turnover of the premises and have

24  that be enforceable.

25        I'm going to keep thinking about that, but I think



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   I can do it and I think that I also could, to the extent that

2   I keep this case in Chapter 11, I think that I could start a

3   clock running today for the reimbursement of the landlord's

4   fees and expenses in continuing to have to litigate this

5   when, at the end of the day, if what happens -- if you were

6   to go to State Court, the premises were to be turned over,

7   then I would think these are fees and expenses that the

8   landlord need not have incurred.

9            So, I'm just putting that out there as what my

10  current thinking is, so I think I'm going to have to have an

11  evidentiary hearing.  I have a little case called Amback

12  that's coming in at 3:00 today, so I don't have an unlimited

13  amount of time.  So, Ms. Daley, you're going to put on your

14  case, we'll make a record, and then we'll go from there.

15           I may want some further submissions, but I'm just

16  -- it's not a threat, it's just a statement of what my

17  current thinking is, that there are -- I'm a firm believer in

18  there being consequences to one's actions.  So, I'm just

19  putting it out there that there are going to be consequences

20  to the desire to remain as a Chapter 11 Debtor.

21           If you can convince me that there's a bona fide

22  Chapter 11 case here, then that's what we'll do, but I want

23  to hear everything and then I'll make a decision.  All right?

24           MR. LEINWAND:  That's fine, Your Honor.

25           MS. DALEY:  I'm ready to proceed, Your Honor.

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1              THE COURT:  Okay.

 2              MS. DALEY:  The first thing I would like to do is

 3     I would like to submit the certified copies of the State

 4     Court --

 5              THE COURT:  Okay, have you shared them with

 6     counsel?

 7              MS. DALEY:  I have copies.  I know that they had

 8     them but I --

 9              THE COURT:  Okay.

10              MS. DALEY:  -- have copies to provide to them.

11     Your Honor, how -- I haven't been before Your Honor.  You

12     don't have rules from what I understand, so how do you want

13     to deal with the exhibits?

14              THE COURT:  Why don't you identify the exhibits

15     that you want to put into evidence and then you can move

16     their admission and if there are no objections, we'll put

17     them in the record.

18              MS. DALEY:  Fine.  Your Honor, the first document

19     that I would like to move into evidence as the Movant's

20     Exhibit number 1 is a certified copy of an order and decision

21     issued by the Supreme Court of the State of New York, County

22     of New York, in an action entitled "2626 B-way LLC versus

23     Broadway Metro Associates, LP" with an index number of

24     106287/09.

25              THE COURT:  And what's the date of that order?
```



1    MS. DALEY:  This is January 21st of 2010.  It
2  looks as if it was filed in the Supreme Court Clerk's office
3  on January 22nd of 2010.

4    THE COURT:  Okay, so that's Exhibit 1.

5    MS. DALEY:  Now, this action, Your Honor, involved
6  a lawsuit commenced by the Debtor against the landlord based
7  upon their claim that the landlord should not have been
8  entitled to retain a $525,000 contract deposit.

9    THE COURT:  Okay.

10    MS. DALEY:  Okay, and in this action, the court
11  found, and I'm going to reference page 13 of this decision,
12  under the heading "Plaintiff's 6th Cause of Action" where the
13  court found that Broadway Metro made no anticipatory or
14  breach -- or actual breach of the contract.  The release of
15  the money in escrow to Broadway Metro was therefore
16  appropriate.  And this is the original certified copy.

17    THE COURT:  Okay, and you're introducing this on
18  the issue of whether or not there's any remaining security
19  deposit?

20    MS. DALEY:  That, as well as the issue -- it will
21  also go towards the issue of bad faith.

22    MR. LEINWAND:  Ms. Daley, if I may without --
23  trying to be as civil as I can, I think there's something --
24  my client has advised me that he will consent to a dismissal
25  of this Chapter 11 case which I think should resolve the



1  motion, should resolve the issue, and should give you plenty

2  of time to deal with the case.  You've just got to sign.

3          MS. DALEY:  Your Honor, I believe that this is

4  just another one of the Debtor's tactical --

5          THE COURT:  What can I do if he wants to dismiss?

6          MS. DALEY:  Consenting to dismissal, well -- prior

7  to granting his application, Your Honor, I would request that

8  the Court direct him to deliver the keys under my portion of

9  the application to vacate the stay in an effort to recover

10 possession of the premises.

11          I would also request that the Court condition any

12 dismissal upon a provision whereby the Debtor cannot re-file

13 within a certain time period, where none of his affiliates

14 which there are eight or ten of them listed on his schedules

15 as creditors, that --

16          THE COURT:  Why do you care if I were to condition

17 the dismissal on prohibiting a re-filing of this Debtor?

18 You're a contract counter-party.  Why do you need affiliates?

19          MS. DALEY:  Because we anticipate that what he'll

20 do is come in under one of the other entities trying to make

21 claims against us in some way, shape, or form.

22          THE COURT:  Come in here?

23          MS. DALEY:  Yes, Judge, or that Mr. Soto, who I

24 think filed in 2002 -- he may have received his own

25 individual discharge back in 2002 -- may try to also file.



```
 1              THE COURT:  But if I dismiss this Debtor, this

 2    case for this Debtor who's your counter-party and I prohibit

 3    your counter-party from filing for 180 days and then if other

 4    entities come in, I can deal with the other entities when

 5    they come in.  I don't think that that would --

 6              MS. DALEY:  Well, I think, Your Honor, that his

 7    proffer of dismissal, I think, clearly smacks us all in the

 8    face that this filing was in bad faith.  I think the Court in

 9    granting --

10              THE COURT:  Don't nod at me.  I am being played

11    here big time.

12              MR. LEINWAND:  Your Honor --

13              THE COURT:  We're going off the record.  Everybody

14    come back here.

15         (Brief recess from 11:46 a.m. to 12:23 p.m.)

16              THE COURT:  On the record.  Okay, rather than

17    continue to make a record today and based on certain

18    representations of counsel that were made on the record

19    before we broke for an adjournment, we're going to pursue the

20    vacature of the automatic stay as was offered by the Debtor.

21              Counsel for Broadway Metro Associates is going to

22    prepare an appropriate order and that order will, among other

23    things reflect the vacature of the stay for all purposes with

24    respect to the pursuit of rights and remedies in various

25    State Court proceedings that are pending involving these
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1   parties, will direct that the landlord be given access to the

2   property whether that takes the form of a set of keys which

3   is what I would prefer because it is not necessary for the

4   Debtor to be present.  The landlord needs to have access to

5   the premises as it sees fit.

6           The order will also direct that there be further

7   briefing submitted on the issue of the scope of this Court's

8   authority to order immediate surrender of the premises.

9           The motion to dismiss will be adjourned without

10  date pending these further proceedings.  The Court will take

11  under advisement the issue of whether and to what extent

12  there will be additional consequences for the failure to pay

13  the rent as was previously directed by the Court.

14          And subsequent to the completion of the briefing

15  on the ability to direct surrender of the premises, there

16  will be an additional date given to you to resume any hearing

17  that should be necessary.

18          The Office of the U.S. Trustee should be copied on

19  the drafting of the order.  In the event the parties are

20  unable to agree on the form of order, you can submit

21  competing orders and the Court will enter what I deem

22  appropriate.  Ms. Daley?

23          MS. DALEY:  Your Honor, one additional thought.

24  Would the Court be inclined to direct a special trustee to be

25  appointed now pending everything else that's going to be

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1  happening?  I just thought that in light of the fact that

2  we've got issues with regard to the building itself, not only

3  its condition, but the probability of future damage to it, et

4  cetera, that maybe it wouldn't be a bad idea.

5           THE COURT:  Well, the fact that I'm going to give

6  you access and that I'm going to retain the case and not

7  dismiss the case gives me some comfort that in the event that

8  there are issues that you are unable to address you can come

9  back to me to complain.

10          I'm very reluctant to insert an additional expense

11 and an additional person in this situation when I've yet to

12 hear, although based on the papers thus far, I'm not

13 confident that there are any, let alone substantial, assets

14 in this case.  I would much rather have you -- your client

15 knows the property best -- have direct access to the

16 property.

17          And also, to the extent that you can craft

18 appropriate hold harmless language, I want to be clear that,

19 to the extent that there have been dangerous conditions

20 alleged with respect to the premises, they are what they are

21 and I don't want there to be a liability that is asserted if

22 somebody gets hurt in there.

23          So, I think we want to put everybody on notice

24 that there's been allegations that dangerous conditions exist

25 on the property.  I don't know if you want to -- you know, if

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1  you have outside people coming in, if you want them to sign

2  waivers, but I think everybody has to be -- have kind of an

3  assumption of the risk here with respect to the entry onto

4  the property.

5          And, by granting you access as the owner of the

6  premises, you take whatever steps that you deem appropriate

7  and I'm going to direct the Debtor to cooperate in every

8  respect in that regard because there's no upside to anybody

9  getting hurt or the premises becoming further damaged.

10          All right, have I neglected to cover anything?

11  Somebody wants to tell you something, Ms. Daley.

12          MS. DALEY:  Your Honor, my client wanted to know

13  if he can go into the building and make whatever repairs or

14  changes for safety purposes --

15          THE COURT:  Yes, absolutely.  That's what my order

16  means.

17          MR. LEINWAND:  Exactly, Your Honor, and it's

18  subject of course as Your Honor said to a hold harmless so

19  that in the event any actions taken by the landlord with

20  respect to the premises that cause in any manner a detriment

21  to the value of the premises, we will have the appropriate

22  hold harmless, because what you're doing, Your Honor, is

23  permitting an outside source to come into Debtor's property

24  --

25          THE COURT:  It's not the Debtor's property.



 1          MR. LEINWAND:  To come into property in which the
 2    Debtor is the -- at present --

 3          THE COURT:  In which the Debtor asserts an
 4    equitable interest.

 5          MR. LEINWAND:  That's correct, Your Honor.  And
 6    subject to the hold harmless, you know, we have no concern
 7    about that, but you know, the wholesale changes I think would
 8    go beyond --

 9          THE COURT:  The landlord is going to go back to
10    State Court and continue to attempt to obtain possession.

11          MR. LEINWAND:  I understand, Your Honor.

12          THE COURT:  Unless I determine -- unless and until
13    I determine that I can simply direct the turnover of
14    possession.  In the meantime, as the owner of the property
15    and under my watch, they're going to do whatever they think
16    is appropriate to safeguard the property.

17          MR. LEINWAND:  We have no problem with
18    safeguarding the property, Your Honor.  I think the request
19    was to do whatever's necessary to -- whatever they want to do
20    which may constitute structural changes, et cetera, and I
21    don't think that -- I think that goes beyond the ambit of
22    what Your Honor is directing at this point in time.

23          I understand that we all want to maintain --

24          THE COURT:  Have your client stand up.

25          THE DEBTOR:  Yes, ma'am.

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

An AlexanderGallo Company

```
 1              THE COURT:  Good afternoon.  Why are we continuing
 2  to have to argue about this issue?
 3              THE DEBTOR:  I have been involved with this
 4  building for the last four years.  I had the fire department
 5  in there a couple of days ago; there was ten firemen that
 6  walked around the building.  There was nothing -- there was
 7  no violations issued --
 8              THE COURT:  All right, if she, if the landlord --
 9              THE DEBTOR:  If they want to come in and do some
10  safety whatever, whatever they think --
11              THE COURT:  Something for the benefit of the
12  building.
13              THE DEBTOR:  That's no problem, Your Honor.
14              THE COURT:  Okay, then the conversation's over.
15              THE DEBTOR:  Yeah, I mean, yes, no problem, yes.
16              THE COURT:  Because if she does something for the
17  benefit of the building and somehow at the end of this very
18  long day you prevail, then that would hypothetically inure to
19  your benefit, correct?
20              THE DEBTOR:  Definitely yes.  Yes, Your Honor.
21              THE COURT:  So, if it's --
22              THE DEBTOR:  Can I ask Your Honor to ask them what
23  exactly they're going to do?  Because I have -- I've been in
24  that building for four years.  It's been around for the last
25  hundred years.  There's nothing --
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

```
 1                    THE COURT:  You know what --
 2                    THE DEBTOR:  I just want to know, that's all.
 3                    THE COURT:  You know what?  I'm not
 4    landlord/tenant court, all right and I assume the parties are
 5    going to act in a rational, economic fashion.
 6                    THE DEBTOR:  Okay.
 7                    THE COURT:  People don't have extra money to throw
 8    around doing things that don't make sense rationally,
 9    economically.  So, you're going to give her access?
10                    THE DEBTOR:  Yes, and if there's a problem, Your
11    Honor, with them and us -- I mean, with them and me, okay, as
12    far as doing things that really, really aren't necessary and
13    just to spend money and just --
14                    THE COURT:  It's their money.
15                    THE DEBTOR:  Okay.
16                    THE COURT:  It's their money.
17                    THE DEBTOR:  Okay, yes.
18                    MS. DALEY:  Just so, Your Honor, with regard to
19    that tortuous inference, the adversary proceeding --
20                    THE COURT:  Yes.
21                    MS. DALEY:  -- we're going to include in the
22    proposed order a provision that it be remanded and that the
23    parties can continue in State Court with respect to that.
24                    THE COURT:  You don't want to keep it here and
25    just --
```

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1          MS. DALEY:  The judge in State Court on the eve of

2   rendering a decision as to whether or not it should have been

3   dismissed, pre-answer, was stayed as a result of this

4   bankruptcy filing.

5          MR. LEINWAND:  Your Honor, that has nothing to do

6   with this hearing.  If she wants to -- if landlord wants to

7   make a motion to remand, they're free to make a motion to

8   remand.  As it stands now, what is before Your Honor has

9   nothing to do with the modification of the stay motion.

10  There's no stay relief with respect to that motion.  The

11  motion's with the jurisdiction of this Court, not the State

12  Court.  The State Court has no jurisdiction to decide that

13  issue unless and until --

14         THE COURT:  Let's put that over to the side for

15  now, Ms. Daley.  Let's just focus on the possession of the

16  property for now.

17         MS. DALEY:  I understand, Your Honor.

18         THE COURT:  All right.

19         MS. DALEY:  It's just an effort so that my client

20  didn't have to continue spending fees unnecessarily because

21  they're going to be making a motion to have it remanded.

22         THE COURT:  I understand, but let's -- right now,

23  you don't have to do anything.  I have it.  Right?  Let's see

24  what happens.  Maybe it will have a way of taking care --

25         MS. DALEY:  But we have to file an answer, Judge.



1          THE COURT:  Get an extension of time.  Give her an

2    extension of time.  All right, you can put that in the order

3    that the time to answer is adjourned for 45 days, pick a

4    number.  All right?  I think we're done for today.

5          MR. LEINWAND:  Thank you, Your Honor.

6          MS. DALEY:  Thank you, Your Honor.

7             (Time noted:  12:33 p.m.)

8                  *  *  *  *  *

9

10                  CERTIFICATE

11      I, RANDEL RAISON, certify that the foregoing is a

12   correct transcript from the official electronic sound

13   recording of the proceedings in the above-entitled matter, to

14   the best of my ability.

15

16   _____          July 18, 2011

17   Randel Raison

18

19

20

21

22

23

24

25

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company