```
 1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2
      IN RE:                     .   Case No. 10-14731-scc
 3                               .   Chapter 11
      2626 BROADWAY, LLC,        .
 4                               .   One Bowling Green
                      Debtor.    .   New York, New York  10004
 5                               .
      . . . . . . . . . . . . . .   Wednesday, February 16, 2011
 6                                   10:06 a.m.

 7    TRANSCRIPT OF MOTION TO DISMISS AND SURRENDER PREMISES BEFORE
                   THE HONORABLE SHELLEY C. CHAPMAN
 8                 UNITED STATES BANKRUPTCY JUDGE

 9    APPEARANCES:

10    For Broadway Metro            M. Teresa Daley Law Offices, PC
      Associates, L.P.              By M. Teresa Daley, Esq.
11                                  By Andrea J. Lawrence, Esq.
                                    520 8th Avenue, 24th Floor
12                                  New York, New York  10018
                                    (212) 560-3943
13
      For the Debtor, 2626          Robinson Brog Leinwand Green
14    Broadway, LLC                   Genovese & Gluck, P.C.
                                    By Robert M. Sasloff, Esq.
15                                  875 Third Avenue
                                    New York, New York  10022
16                                  (212) 586-4050

17    Audio Operator:               F. Ferguson

18    Transcription Service:        Esquire
                                    One Penn Plaza, Suite 4715
19                                  New York, New York  10119
                                    (212) 687-8010
20

21

22

23

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.
```



1                    (Time Noted:  10:06 a.m.)

2              THE COURT:  All right, 2626 Broadway.  Good

3 morning.

4              MR. SASLOFF:  Good morning, Your Honor.

5              MS. DALEY:  Good morning, Your Honor.

6              THE COURT:  Appearances?

7              MS. DALEY:  M. Teresa Daley, M. Teresa Daley Law

8 Offices, P.C., 520 8th Avenue, 20th Floor, New York, New

9 York, for Broadway Metro.

10             THE COURT:  All right, good morning, Ms. Daley.

11             MS. DALEY:  Good morning.

12             MR. SASLOFF:  Robert Sasloff from the firm of

13 Robinson Brog Leinwand Greene Genovese & Gluck, we're counsel

14 to the Debtor in this Chapter 11 case, Your Honor.

15             THE COURT:  All right.  What's the status?

16             MS. DALEY:  Well, at this point, Your Honor,

17 eviction was obtained on January 24th of 2011 and so they're

18 out of possession.

19             THE COURT:  Okay.

20             MS. DALEY:  I believe that the adversary

21 proceeding was remanded down to the State Court --

22             THE COURT:  Correct.

23             MS. DALEY:  -- so they're going back and forth on

24 that, over that.  And right now here at this time, our motion

25 to dismiss for bad faith filing was still before Your Honor.



1          THE COURT:  Was pending, okay.

2          MS. DALEY:  And our issue here at this point is

3   whether or not the Court would dismiss this bankruptcy, but

4   with prejudice based upon the fact that the Debtor, since

5   they filed last -- September 3, 2010 has done nothing other

6   than park itself here, pretty much attempt to manipulate the

7   various courts with the claims that they've had and the

8   landlord continues to be damaged by everything that's

9   happened here.

10          And, counsel for the Debtor had offered to just

11  have -- to essentially a dismissal --

12          THE COURT:  Right.

13          MS. DALEY:  -- but the problem is, is that they

14  won't consent to a dismissal with prejudice.  We don't want

15  to be faced with a situation where things start going bad in

16  State Court and either Debtor or the Debtor's only principal,

17  Mr. Soto, decides to come back again and file again so that

18  they can park things here.

19          THE COURT:  Well, what's -- in the State Court

20  litigation, is Mr. Soto or the Debtor the plaintiff in the --

21          MS. DALEY:  There's a State Court action --

22          THE COURT:  There's a State Court action relating

23  to the failed -- the allegedly failed Urban Outfitters

24  transaction?

25          MS. DALEY:  The tortious interference.



1          THE COURT:  Tortious interference?

2          MS. DALEY:  Yes.  And we still have our action

3    where we had started back in 2009 where that -- we haven't

4    even done any discovery because they made applications to

5    dismiss.

6          THE COURT:  And that's an action for --

7          MS. DALEY:  That was against the Debtor as well as

8    Mr. Soto.

9          THE COURT:  For?

10          MS. DALEY:  For damages --

11          THE COURT:  For monetary damages?

12          MS. DALEY:  Correct.  It was all monetary and on

13   Mr. Soto's part is that he was a personal guarantor of the

14   lease.  So, that is going to proceed in the State Court to

15   the extent that it can proceed.

16          THE COURT:  Right.

17          MS. DALEY:  Once a stay is vacated here letting us

18   go back on that case because the stay was not vacated to the

19   extent of permitting us to continue the prosecution of that

20   case.

21          In fact, I think a decision came down from State

22   Court based on a motion that was an old motion, their motion

23   to dismiss I think back in September, but we haven't been

24   able to do anything because of the stay that was imposed here

25   and then they have the tortious interference case that's the


ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1 │ 2626 B-way case against Broadway Metro that they're

2 │ prosecuting.

3 │         THE COURT:  Who are the parties in the action in

4 │ which your client is the plaintiff?

5 │         MS. DALEY:  2626 B-way and John Soto.

6 │         THE COURT:  Individually?

7 │         MS. DALEY:  Correct.

8 │         THE COURT:  Okay.

9 │         MS. DALEY:  And I don't think there's anybody else

10 │ but I don't want to swear to it because I don't have the

11 │ actual caption in front of me, but those were the two main

12 │ parties.

13 │         THE COURT:  All right.  Let me hear from Mr.

14 │ Sasloff.

15 │         MR. SASLOFF:  Thank you, Your Honor.  You know,

16 │ the Debtor is consenting to the dismissal of the case.  We

17 │ just do not believe that the circumstances of this case

18 │ should require a dismissal with prejudice.

19 │         THE COURT:  Why do you believe that?

20 │         MR. SASLOFF:  This is the first time this Debtor

21 │ has filed.  Debtor has not been a serial filer and hasn't

22 │ obstructed the landlord in this case beyond what a normal

23 │ Debtor --

24 │         THE COURT:  Hasn't?

25 │         MR. SASLOFF:  Not in this case.


ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1    THE COURT:  Let me refresh your recollection, all
2  right?  Let me refresh your recollection.  We had a hearing
3  early on in this case in which it was pointed out to your
4  client that he was required to pay rent and he sat there
5  right behind you and indicated that, in fact, he was going to
6  pay rent within the sixty days and he did not.

7    MR. SASLOFF:  What he indicated, Your Honor, was
8  he understood that the requirements of the Code were that the
9  company pay rent or there would be consequences.  A business
10  decision was made by Mr. Soto personally, as well as on
11  behalf of the Debtor, to not put an additional $100,000 into
12  the case if he didn't think there was going to be a
13  likelihood that in this case he'd be able to survive.

14    So, a business decision was made.  Debtor used its
15  business judgment not to do that and the consequence of that
16  was that this Court rightfully lifted the stay on November
17  22nd.  That was --

18    THE COURT:  Well, your recollection of that day
19  and mine are different, but we can just leave it at that for
20  now.

21    MR. SASLOFF:  Well, Your Honor made it clear that
22  if the Debtor -- there was a price to this Court, to get
23  entrance into this Court, and that price was the rent and if
24  the Debtor didn't pay the rent that he would suffer the
25  consequences.  He made the decision to suffer the



1  consequences.  We let the stay be modified -- we consented to

2  it at that point even, and then we did not fight the

3  eviction.  We did what we were supposed to do in this Court

4  in the sense of once the Court ruled, we stood by that

5  ruling.

6            The landlord now has possession of the property.

7  I'm not certain that if, in a second filing, how they would

8  be necessarily dragged back into this case if there was even

9  a second filing because right now there's no Debtor.  The

10 Debtor's a shell with potential litigation that could go on

11 for years.

12            I don't know what a dismissal with prejudice would

13 do to the landlord in that circumstance except we're not

14 going to try to remove a case -- nobody would try and remove

15 a case that's in State Court that had already been removed

16 and remanded once before.

17            THE COURT:  What Ms. Daley is talking about, I

18 think, is a circumstance where they get a judgment against

19 the Debtor who's here now and they filed again.

20            MR. SASLOFF:  But -- well, you know, companies can

21 get a judgment, but without any assets the judgment doesn't

22 mean anything, so I don't know what would a bankruptcy do for

23 a company that's got a judgment against it especially if the

24 only claim --

25            THE COURT:  Okay, then let me turn that around on



1    you.  Then what's the prejudice in my ordering a dismissal

2    with prejudice if that's the case?

3              MR. SASLOFF:  Prejudice -- this case doesn't

4    warrant it.  I mean --

5              THE COURT:  Okay, so let's stay on that.  Let's

6    stay on this case.  Nothing has been done in this case.

7    Nothing.  Operating reports, progress towards a plan --

8              MR. SASLOFF:  We've not operated.

9              THE COURT:  You've done nothing.  There has never

10   been any indication of any intent to prosecute this Chapter

11   11 case.  This was purely -- Mr. Sasloff, I don't have

12   evidence, but I have eyes.  This was purely a litigation

13   tactic by your client.  Pure and simple.

14             MR. SASLOFF:  I'm not here denying whether it's a

15   litigation tactic, but it was a litigation tactic that to the

16   extent that we're here today, it's failed.  The consequences

17   of which the Debtor lost the property, lost possession of the

18   property and all the Debtor is technically left with are

19   actions against the landlord that the landlord is obviously

20   going to vigorously defend.

21             THE COURT:  But Chapter 11 is not supposed to be

22   used as a litigation tactic.  It's not.  You're supposed to

23   come to this Court with an intent to reorganize.

24             MR. SASLOFF:  We did have the intent, Your Honor.

25   We had a plan, not a plan of reorganization, which was not



1 able to get off the ground once we lost the first round.

2 There was nothing left for us to do once we lost that first

3 round with regard to what was going to happen to the case.

4 The original idea was to come to the Bankruptcy Court, remove

5 the action, prosecute the Urban Outfitters suit here, and if

6 we were to be successful, use the proceeds of that litigation

7 to fund the plan.

8 　　　　　　Once the Court remanded that action and lifted the

9 stay, whatever plan we otherwise would have had fell by the

10 wayside and failed.  So, what were we supposed to do after

11 that?  We consented to the dismissal of this case two months

12 ago.  We didn't have to be here now.  We only waited until

13 now --

14 　　　　　　THE COURT:  Right, you consented to this -- let's

15 be clear.  You consented to the dismissal of the case, but

16 you wouldn't consent to the surrender of the premises.  This

17 could have all been very much shorter with the landlord

18 incurring far less fees if your client had not persisted in

19 using this Court as an instrument of its litigation tactics.

20 　　　　　　He was very -- once again, I remember him sitting

21 there.  He wanted to avail himself of his State Court rights

22 and remedies, but yet, eventually the landlord got

23 possession.  So --

24 　　　　　　MR. SASLOFF:  And the Debtor didn't play -- I

25 mean, they also talked about whether or not when seeking



1  possession, the really believed that -- you know, one of the
2  reasons why to keep the case open was to make sure the Debtor
3  doesn't play any games with regard to that process and the
4  Debtor didn't, Your Honor.  The Debtor allowed that process
5  to happen naturally.  It didn't interfere with the warrant,
6  it didn't interfere with the execution of the warrant, it
7  didn't interfere with the actual eviction.

8           I think, Your Honor, when you stated correctly,
9  you don't have the facts in this case that I believe really
10 warrant a dismissal with prejudice.  I think Your Honor may
11 be right.  You have a feeling.  I mean, if it --

12           THE COURT:  All right, then do you want to have an
13 evidentiary hearing?

14           MR. SASLOFF:  No, Your Honor.  I just think the
15 case should be dismissed.  I don't think the landlord is
16 going to be impacted one way or the other, even if there was
17 a second bankruptcy.

18           THE COURT:  If Ms. Daley wants a dismissal with
19 prejudice, then she's entitled to an evidentiary hearing.  If
20 you want to go through that, we'll go through it.  We could
21 parse as between Ms. Daley -- my focus is on the Debtor.  I
22 think it would be a stretch for me to enter any sort of an
23 order with respect to the principal.

24           MS. DALEY:  If I may interject, Your Honor?
25           THE COURT:  Please.



1          MS. DALEY:  First of all, when the Debtor came in

2    here, it had nothing to do with the prosecuting of the

3    tortious interference.

4          THE COURT:  I know that.

5          MS. DALEY:  It was to avoid the eviction --

6          THE COURT:  The eviction, absolutely.

7          MS. DALEY:  -- and being served a notice of

8    intention to evict.  As far as counsel suggesting the Debtor

9    did nothing after we left here to try to prevent the

10   eviction, it's my understanding, although I did not see

11   anything in black and write in written form that the Debtor

12   applied to the appellate court in the state in order to try

13   to get a stay, but the application initially wasn't either

14   taken in or wasn't granted.  So, that's one issue.

15          The other part of this is, Your Honor, is that

16   under Section 1112, the clauses, the Court had issued an

17   order early on in this case directing the Debtor to pay post-

18   Petition use and occupancy and the Debtor flagrantly --

19          THE COURT:  That's true.

20          MS. DALEY:  -- violated the order.  And there were

21   no qualms he wasn't making any payments.  So, that's even --

22          THE COURT:  That's true, and I could have entered

23   -- we could have gone down that path and I could have entered

24   a contempt order against him personally, I believe, but we

25   didn't do that.



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1    MR. SASLOFF:  I do not believe that's true, Your

2  Honor.  The Court didn't issue an order, but made a directive

3  from the bench and didn't so order.  It's not in the order.

4  But Your Honor said that that's the price to pay and if you

5  don't pay, you don't get the stay.  We understood that.  The

6  Debtor didn't just --

7    THE COURT:  Look, if we go down this path, then

8  we're going to, you know, we're going to look at the

9  transcripts because we're going to have to take a very close

10  look at what the representations were because I think it has

11  a bearing on what you're saying.

12    And, I have no evidence before me, but I do have

13  my vivid recollection of the various twists and turns in this

14  case and this conduct of this Debtor was the essence of not

15  what a Chapter 11 Debtor is supposed to look like.

16    And, you know, you're telling me why do we need

17  with prejudice, he doesn't have any assets anyway.  Well,

18  that's the classic, you know, standoff between two lawyers.

19  One wants something and the other one says, you know, but it

20  doesn't mean anything, and then the other one says, so then

21  why don't you just give it to me?

22    MR. SASLOFF:  But that's essentially right, Your

23  Honor.  That's what we're stuck with is they want -- and they

24  wanted us out, the guy is out.  They want a dismissal.  The

25  case is appropriate for dismissal.  There's no --



1    THE COURT:  All right, but what your client wants

2  is basically "never mind, sorry, pretend I wasn't here at

3  all."  No, your case wants to leave here without there being

4  any consequences to its actions.  That's what it wants.

5    MR. SASLOFF:  No, Your Honor, respectfully I

6  disagree because there has been consequences to his actions.

7  He lost possession of the property.

8    THE COURT:  No, that's not a consequence of his

9  action.  That's the operation of the law.  The consequence to

10  his actions would be our pursuing an inquiry as to whether or

11  not there was a filing in bad faith and whether or not there

12  is relief that should be granted if there's such a finding.

13    The relief could include a dismissal with -- a

14  order of dismissal with a prohibition against filing for a

15  period of time.  Ms. Daley's going to argue that that could

16  be extended to him as the principal.  There could be legal

17  fees, which have not been asked for yet.

18    But there are consequences.  There are

19  consequences to actions and your client doesn't -- believes

20  that he's immune from that.

21    MR. SASLOFF:  No, Your Honor.  I'm sorry, but the

22  record is clear that that's not true.  The record is clear

23  that the client understood there were consequences and rather

24  than put more money after bad, he was prepared to suffer

25  those consequences.



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010 ?
www.esquiresolutions.com

An AlexanderGallo Company

1    His whole litigation, including the State Court

2 cases that's still pending, in my opinion, are still based

3 upon a lease which he now has lost.  I don't know if any of

4 the actions will survive that mere fact.  In my opinion, they

5 won't.  He still thinks with his other counsel that they'll

6 still have --

7    THE COURT:  But that was another one of the --

8    MR. SASLOFF:  But that was the consequence.

9    THE COURT:  But that was another one of the

10 interesting little moves that was made here because, first,

11 we had the discussion about paying rent, okay.  Then we had

12 the discussion about 365(d)(4) and whether or not he would

13 assume or reject and because the landlord took the position

14 that the lease was terminated pre-Petition, then, in that

15 narrow a circumstance, your client said, well, there's

16 nothing to assume or reject.

17    So, he clearly wanted to have it both ways.  When

18 it was convenient --

19    MR. SASLOFF:  We didn't say there was nothing to

20 assume or reject.  We still believe there was something to

21 assume or reject, but it would have cost him $100,000 and

22 that just was -- it would have had to come from the principal

23 himself or from other sources he would have raised, and on a

24 business judgment basis, he couldn't justify that expenditure

25 when, in his opinion, he felt that he wasn't going to get



1 that relief in this Court.

2        So, he made the business decision to not pay the

3 money, to suffer the consequences, to lose the property which

4 will have whatever affect it has on all of his other

5 litigations. I think that they're fatal, those litigations,

6 but that's my humble opinion. But I think that's the

7 consequence of filing the case.

8        I mean, he came here for specific relief. He

9 didn't get the relief he wanted. He has now suffered, and

10 now we're saying fine, he suffered it; it didn't work. The

11 case should be dismissed. There's no necessarily any real

12 reason for a dismissal with prejudice especially since I do

13 not believe that in a second filing, and I don't think the

14 landlord can really state how a second filing would affect

15 the landlord who already has the property.

16        The litigations are either the Debtor as

17 plaintiff, which we're not removing to this Court --

18        THE COURT: The Debtor represented, I believe and

19 I'm not sure on this point, but the Debtor represented that

20 he -- there were other things that he was going to reorganize

21 around. So, to the extent that there's any notion that there

22 are assets and if the landlord gets a monetary judgment, the

23 landlord's seeking to prevent the loss of the ability to

24 execute on that judgment.

25        MR. SASLOFF: The other things that had the -- its



ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1  believed to reorganize around was the other actions against

2  the landlord, which they have an appeal in the original

3  *Yellowstone* that the Debtor was denied a *Yellowstone*

4  injunction and that if he could overturn that decision, in

5  their opinion, that would undo the termination of the lease

6  as in that action.

7          There is the Urban Outfitters lawsuit and there is

8  the damage claim.  The main asset to have was the sale of the

9  -- excuse me, Your Honor.  Under the original lease, there

10  was a provision that the Debtor had the ability to buy the

11  building.  The Debtor had exercised that option in its

12  opinion.  The landlord -- I'm not quite sure -- rejected that

13  option and there is litigation with regard to that as well.

14  The Debtor if it had the ability to buy the building was, I

15  think, going to flip the building for a profit.

16          So, the other assets that this Debtor relate again

17  to the landlord and there are actions where the Debtor is

18  plaintiff which would be -- nobody in their right mind would

19  be removing to this Court at this point.

20          THE COURT:  I'm going to dismiss the case one way

21  or the other.  It's just a question --

22          MR. SASLOFF:  I was talking in the second filing,

23  Your Honor.  I'm trying to think of what -- how this landlord

24  would be affected on the second filing.  I just don't see how

25  they would be affected in the second filing and if they get a



1 judgment, nobody's going to file an 11 for a Debtor with no

2 assets and no hope of assets to reorganize around trying to

3 undo a judgment.

4       If they file a 7, that's a completely different

5 story and that just means that a trustee would be appointed.

6       THE COURT:  So, then why are you opposing a

7 prohibition against filing an 11?

8       MR. SASLOFF:  It's a matter of principle, Your

9 Honor.  I do not believe that this case warrants a dismissal

10 with prejudice.

11       THE COURT:  With all due respect to you, Mr.

12 Sasloff, I find that an extraordinary statement.  That you

13 are standing there telling me as a matter of principle, I

14 ought to do something for this Debtor -- as a matter of

15 principle.

16       MR. SASLOFF:  I'm not asking you to do anything

17 for the Debtor.  I'm just saying that this case on its record

18 doesn't necessarily --

19       THE COURT:  This case has no record.  There was no

20 record of prosecuting this case as a Chapter 11.  None.

21       MR. SASLOFF:  But that doesn't necessarily require

22 a dismissal with prejudice.  I mean, Your Honor, you've been

23 in this -- you've been before this Court, on this Court.

24 You've seen lots of cases where cases don't work out and most

25 of them don't get dismissed with prejudice.



1         I mean, I've been here for 20 years and I've only
2  had two cases --
3         THE COURT:  There's "it doesn't work out" and
4  there's purposeful conduct.
5         MR. SASLOFF:  Your Honor, we filed this case in
6  September or October.
7         THE COURT:  Yes.
8         MR. SASLOFF:  There was purposeful action in that
9  first month.  We lost.  Once we lost, there was nothing left
10 for us to do.  We've only been waiting for the landlord's
11 eviction for this case to be dismissed.  I would have
12 dismissed this case two months ago.  I was done in December,
13 but we're in February now because --
14        THE COURT:  The moment that your client made the
15 "business decision" as you put it, the business decision to
16 not pay the rent, why did he not turn the keys over to the
17 landlord?
18        MR. SASLOFF:  Because he didn't -- he wasn't
19 required to.
20        THE COURT:  As a matter of principle?
21        MR. SASLOFF:  He's not required to.  Under the
22 law, as a matter of principle, he's only --
23        THE COURT:  If he was acting in good faith --
24        MR. SASLOFF:  Your Honor, there were discussions
25 about the circumstances for a peaceful surrender that didn't



1 go -- that didn't happen.  The Debtor was prepared under

2 certain circumstances to do that.  That didn't happen.

3        You know, you can't just always ask and expect to

4 get without doing something in return.  If we couldn't do it

5 in a manner that was agreeable to both parties, the operation

6 of the law would work, it did work.  Everybody got what they

7 originally wanted.  The landlord got possession.  It didn't

8 have to do much more other than what it wanted to do which

9 was always to go back to State Court to get the warrant

10 issued, to execute the warrant.

11        I was not aware of any application to any

12 appellate court for a stay of the eviction.

13        THE COURT:  But the Debtor could have handed the

14 keys over and enabled the landlord to prevent incurring

15 additional costs and it made a decision to not do that.  Your

16 client undoubtedly wanted something that the landlord wasn't

17 willing to give it.

18        So, look, I don't have a record, so Ms. Daley, if

19 you want to come back and have an evidentiary hearing, if

20 he's not willing to agree on a dismissal with prejudice with

21 respect to the Debtor for a period of time, I'll have an

22 evidentiary hearing.

23        MS. DALEY:  There were subpoenas that were issued

24 way back when we first made the motion.  I think one of the

25 subpoenas was directed against Mr. Soto.  Those subpoenas



1  were supposed to be --

2          THE COURT:  I mean, Mr. Sasloff, how can I not --

3  if she wants an evidentiary hearing, how can I deny her that?

4          MR. SASLOFF:  I don't believe you could.

5          THE COURT:  I'm just asking you.

6          MR. SASLOFF:  I don't think you could.  I mean,

7  Your Honor could -- I take that back.  Your Honor could just

8  say that we don't need an evidentiary hearing, "I'm going to

9  dismiss the case.  If he files again, it's going to come back

10 to this Court and there's going to be severe consequences."

11         THE COURT:  Well, no, but he could, you know, I

12 see a lot of creative things done here, okay, and there could

13 be a filing somewhere else that wouldn't necessarily come

14 back to me, okay?  Lots of creativity.

15         MR. SASLOFF:  I would have no doubt that the

16 landlord or landlord counsel would find a way to make sure it

17 came back to you if this Debtor filed anywhere.

18         THE COURT:  I have no -- I'm just trying to uphold

19 the law.  That's my job.

20         MR. SASLOFF:  And I think so are the -- both

21 parties, Your Honor.  I'm not criticizing the landlord's

22 counsel for wanting something more than what they should

23 otherwise be entitled to.  What I'm saying is that --

24         THE COURT:  No, she's just -- not what she should

25 otherwise be entitled to.  She wants something that she



1 believes she is entitled to.

2      MR. SASLOFF:  And we believe that the landlord is

3 not entitled to a dismissal with prejudice, especially since

4 there's no second filing that would impact the landlord.  So

5 why --

6      THE COURT:  You're telling me it's your position

7 as a matter of principle and not as a matter of law.

8      MR. SASLOFF:  Well, I think it's a matter of law.

9 There's no basis for a dismissal with prejudice either, but

10 I'm pursuing this -- look, my firm is already in the hole to

11 this client and will not see a dime more from this client.

12 That's our problem, not their problem.

13      So, I'm not here defending "the client."  What I'm

14 here defending is that a Debtor files a bankruptcy, it is

15 unsuccessful, quickly unsuccessful with its case.  It was

16 prepared for dismissal.  It consented to dismissal in

17 November when Your Honor entered this stay order.

18      They may have even been able to get a dismissal

19 with prejudice then.  I think it was part of the discussions

20 then to have a dismissal with prejudice.

21      THE COURT:  And the reason they didn't do it was

22 because there was a track record of your client frustrating

23 their every move and that's why we kept it here.

24      MR. SASLOFF:  Rightfully so.  I agreed with that

25 consequence.



1           THE COURT:  And we kept it here to see the State

2   Court process through and it could have been over then by

3   handing the keys over.

4           MR. SASLOFF:  Well, but the State Court process

5   then went through its normal course --

6           THE COURT:  All right, Ms. Daley, how long a

7   prohibition do you want?

8           MS. DALEY:  A long time.

9           THE COURT:  How long?  Blanket prohibition or a

10  period of time?

11          MS. DALEY:  I would like at least a year only

12  because I can anticipate that what's going to happen --

13  what's going to happen in State Court are all different

14  things and the creativity factors that come into play and

15  them trying to somehow, someway frustrate whatever we do over

16  in the State Court because I mean, this has been from day one

17  a dispute between two parties that should have never been

18  brought here.

19          THE COURT:  Right.

20          MS. DALEY:  Okay, the other issue is the guaranty

21  issue because I can see us getting a judgment in State Court,

22  let's say on a summary judgment motion, and then trying to do

23  something with that and then coming back here to put them in

24  bankruptcy and then trying to preclude us on the guaranty

25  action because I'm sure that there are going to be issues and



1 claims raised that why the guaranty should not be complied
2 with.

3       So, I mean, I can see both the Debtor and Mr. Soto
4 running back over here in order to continue to frustrate our
5 every move in State Court and that's what my concern is.

6       THE COURT:  All right, can I speak to the two of
7 you off the record in chambers?

8       (Recess taken from  10:32 to 10:58 a.m.)

9       THE COURT:  All right, Ms. Daley, so your request,
10 just so I can be clear is for a dismiss with prejudice, but
11 you also want -- your request is also that the order extend
12 to the principal of the Debtor.

13       MS. DALEY:  Yes, Your Honor.

14       THE COURT:  Okay and Mr. Sasloff, is there
15 anything else that you wish to add to the arguments that you
16 made before we took the break?

17       MR. SASLOFF:  No, Your Honor.

18       THE COURT:  All right, well, I think we have, as I
19 said earlier, I have a recollection of what occurred in this
20 Court from the beginning of the case and even though an
21 evidentiary record has not been created today, I think that I
22 can take judicial notice of what occurred here before.

23       And, based on all the facts and circumstances in
24 this case, I am going to enter an order dismissing this case
25 with prejudice for 270 days.  But that order, Ms. Daley, is



1  not going to extend to the principal of the Debtor because I

2  don't think there's been a showing made in that regard.

3          So, with that, I think that that concludes all

4  matters before me.

5          MS. DALEY:  Does Your Honor want us to submit the

6  order?

7          THE COURT:  If you could work together and draft

8  an order that's mutually acceptable and then just email it to

9  chambers, although Mr. Schneiderman is moving onto bigger and

10 better things on Friday, so if you could just send it to my

11 chambers email or to Ms. Eisen, we'll get it entered as soon

12 as you have it agreed to.  All right, thank you both.  Good

13 luck.

14         MS. DALEY:  Thank you very much Your Honor.

15         THE COURT:  Thank you.

16         MS. DALEY:  Just one other thing.  The adversary

17 proceeding, there were subpoenas issued, however the case was

18 remanded to State Court.  My request is that the subpoenas

19 should fall based upon the remand and the dismissal of this

20 Petition.

21         MR. SASLOFF:  The subpoenas were in the main case,

22 not the adversary, but if the case is dismissed --

23         THE COURT:  Dismissed, then they go away -- are of

24 no force and effect.

25         MS. DALEY:  All right, we'll add something to the



1  order maybe?  Do you have a problem with that?

2           THE COURT:  I think you can have -- I think that

3  can stand on this record as a representation between counsel

4  and that you don't have to muddy the dismissal order with

5  that.

6           MS. DALEY:  Very good, Your Honor.

7           MR. SASLOFF:  Thank you.

8           THE COURT:  All right, thank you.

9           MS. DALEY:  Thank you.  Have a good day.

10               (Time noted:  11:00 a.m.)

11                    *  *  *  *  *

12

13                      CERTIFICATE

14      I, RANDEL RAISON, certify that the foregoing is a

15  correct transcript from the official electronic sound

16  recording of the proceedings in the above-entitled matter, to

17  the best of my ability.

18

19  _____          July 18, 2011

20  Randel Raison

21

22

23

24

25

